### The Louisiana Sugar Refining Company et al.
### v. W. M. Harrison et al.

#### No. 1456.

1  **Fraudulent Intent—Preferring Creditors.**—An intent on the part of an insolvent maker of a trust deed given to secure preferred creditors, to thereby hinder and defraud other creditors, may vitiate the instrument, whether it be the debtor's primary intent or a secondary one.

2.  **Same—Mere Preference Not Fraudulent.**—An insolvent debtor has the right to prefer a creditor in the payment of a just debt, and although this has the effect of hindering and delaying other just creditors, it will not of itself vitiate the transaction.

3.  **Same—Fraud Vitiating Only in Part.**—That some of the claims secured by a trust deed are fictitious will not vitiate the instrument as to other claims of bona fide creditors therein accepting without notice of the fraud.

4.  **Same—Notice of Fraud to Creditor.**—A creditor accepting the benefits of a trust deed with knowledge of the debtor's intent to thereby defraud other creditors, becomes a party to the fraud, and the deed is void as to him.

APPEAL from Tarrant.   Tried below before Hon. W. D. HARRIS.

*Ball, Tempel & Ball*, for appellants.—1.  The court erred in sustaining the demurrers to the third and tenth paragraphs of plaintiffs' controverting affidavit, which alleged facts tending to show such fraudulent intent in making the trust deed as would render it void.   Linn v. Wright, 16 Texas, 35; Humphries v. Freeman, 22 Texas, 45; Arthur v. Bank, 17 Miss., 433; Griffin v. Barney, 2 N. Y., 371; Smith v. Howard, 20 How. Pr. (N. Y.), 128; Bump on Fraud. Con., 217; Wait on Fraud. Con., sec. 327; Mosely v. Gainer, 10 Texas, 293; Edrington v. Rogers, 15 Texas, 195; Baldwin v. Peet, 22 Texas, 708; Nicholson v. Leavitt, 2 Selden, 510; Kimball v. Thompson, 58 Mass., 441.

2.   The court erred in refusing to give the following special charge requested by plaintiffs, to wit:   "If the jury believe from the evidence in this case that any of the debts of Mrs. Sallie Bateman, A. Q. Bateman, M. K. Bateman, and A. J. Bateman, secured by the deed of trust, in controversy herein, are false and fictitious in whole or in part, then said deed of trust is void for fraud, and it matters not whether the other creditors whose claims are just and true knew of the fact or not."   Simon v. Ash, 20 S. W. Rep., 719; Wait on Fraud. Con., secs. 194, 434; Trist v. Child, 21 Wall., 452; McGuire v. Corwine, 101 U. S., 111; Weeden v. Hawes, 10 Conn., 50; Beall v. Williamson, 14 Ala., 55; Sommerville v. Horton, 4 Yerg. (Tenn.), 547; Holt v. Creamer, 34 N. J. Eq., 187; Hyslop v. Clark, 14 Johns., 458.

3.   On primary intent:   Rev. Stats., art. 2465; Baldwin v. Peet, 22 Texas, 708, 721; Burr. on Assign., 421.

4.   On notice to creditors:   Baldwin v Peet, 22 Texas, 721; Green v. Bank, 24 Texas, 520; Jones on Chat. Mort., sec. 336; Tronstine v. Lask, 4 Baxter (Tenn.), 162.

*Field, West & Smith, Wynne, McCart & Booty, Humphreys & McLean, Crawford & Crawford*, and *Hunter, Stewart & Dunklin*, for appellees.

1.  The execution of the trust deed and the delivery of the possession of the goods thereunder to trustees, who at the time of such execution and delivery had no knowledge of any fraud on the part of the grantors, would fix a lien on said property to secure the bona fide debts of creditors named who did not participate in such fraud.   Valentine v. Ellis, 65 Texas, 532; Hamell v. Mars, 82 Texas, 493; Sanger Bros. v. Henderson, 21 S. W. Rep., 114; Morris v. Pearson, 79 N. C., 253; 1 Jones on Mortg., sec. 620; Hardcastle v. Fisher, 24 Mo., 70.

2.   The giving of the lien on a part or the whole of an insolvent's property to secure bona fide debts is valid, even though the debtors gave it with the intent to secure favored creditors advantage over other creditors, and thus to hinder and delay or even to defeat the collection of their debts.   Ellis v. Valentine, 65 Texas, 532.

3.  A deed of trust made to secure several debts owed by different parties, one or more of which are fictitious and fraudulent, will be

sustained for the benefit of the true creditors, although the fictitious or fraudulent claim may be displaced. Shoe Co. v. Mars, 82 Texas, 495; Morris v. Pearson, 79 N C., 253; 28 Am. Rep., 315; 1 Jones on Chat. Mort. secs. 336, 620; Bump on Fraud. Con., sec. 385; Tronstine v Lask, 4 (Baxter) Tenn., 162; 14 S. W. Rep., 922.

4. If the debts of the beneficiaries were honest debts against the grantor, even though they may have known his purpose was to hinder and delay his creditors, yet if they accepted the security on their part not for the purpose of aiding him in hindering and delaying his creditors, but to secure their debts, the mortgage would be good. Rider v. Hunt, 25 S. W. Rep., 314; Prewit v. Wilson, 103 U. S., 22; Jaeger v. Kelly, 52 N. Y., 274; Bank v. Ridenour, 46 Kas., 767; Dudley v. Danforth, 61 N. Y., 626; Kraus v. Hass, 25 S. W. Rep., 1025.

5. If the debt secured is bona fide, then it is immaterial that the creditors know of the fraudulent intent of the debtor, and the mortgage would be valid whether he participated in such fraudulent intent or not, for if such fraudulent intent existed in the mind of the mortgagor, it would only be fraud in intent and not in fact. Iron Works v. Bresnahan, 66 Mich., 502.

STEPHENS, ASSOCIATE JUSTICE.—Appellants, by means of garnishment severally sued out and afterward consolidated without objection, attacked as fraudulent and void a trust deed or chattel mortgage in the usual form, made December 22, 1890, by Bateman & Bro., a firm doing a large business as wholesale grocers at Fort Worth, which in terms conveyed their entire stock of goods, of the invoice value of about $135,000, to W. M. Harrison and D. H. Kernaghan, in trust, for the purpose of securing the payment of the several debts of the various creditors therein named, aggregating in round numbers $126,-000. Simultaneous with the execution and delivery of this conveyance, the Bateman firm, then insolvent, and owing about $200,000 to other creditors, including appellants, made an actual delivery of the goods conveyed to said trustees.

The amended answer of the garnishees, after denying liability, set up that the goods had been delivered to and held by them under this instrument to secure the debts therein specified, and that, in accordance with its provisions, they had sold the same for the sum of $113,-799.61, claiming a deduction from this sum of $24,857.25, to cover the itemized expense of executing the trust. The beneficiaries named in the instrument, having been made parties defendant at the instance of appellants, also filed answers claiming the benefits of the trust deed.

The controverting affidavit, among other things, charged that this conveyance had been made with intent to hinder, delay, and defraud creditors, with the knowledge of both trustees and beneficiaries, and particularly that the claims, amounting to $20,000 or $30,000, preferred by the instrument in question in favor of the sister-in-law,

mother-in-law, wife, and sons of members of the Bateman firm were fictitious.

The court submitted special issues to the jury, in response to which the following verdict was returned:

"1. We the jury do not find from the evidence that the deed of trust executed by Bateman & Bro. on December 22, 1890, was fraudulent and void.

"2. We the jury find the following claim mentioned in the deed of trust was incorrect at the time the deed of trust was made, to wit, M. K. Bateman, to the extent of the Banner Grocery Co., account of $990.30, balance $5219.14; and we the jury find that the evidence failed to show any of the following claims to have been incorrect at time the deed of trust was executed, to wit:

| | |
|---|---:|
| "Mrs. Kathleen Randle | $ 2,500 00 |
| "Mrs. A. F. Dial | 1,000 00 |
| "Mrs. Jane Baldwin | 400 00 |
| "State National Bank. | 15,802 39 |
| "Farmers and Mechanics Bank | 20,000 00 |
| "Mrs. H. H. Thacker | 675 50 |
| "Mrs. M. K. Mayberry | 3,022 00 |
| "D. W. Humphreys | 2,800 00 |
| "N. La Croix | 800 00 |
| "A. Q. Bateman | 4,102 05 |
| "N. W. Robertson | 800 00 |
| "D. H. Kernaghan | 816 26 |
| "Mrs. L. C. Havens | 2,500 00 |
| "Mrs. Mollie J. Humphreys | 1,200 00 |
| "Dora Auschicks | 700 00 |
| "Merchants National Bank | 37,527 17 |
| "Traders National Bank | 1,500 00 |
| "Mrs. Eloise Thomas | 10,009 00 |
| "Mrs. Sallie Bateman | 7,935 25 |
| "H. C. Poythress | 1,000 00 |
| "W. B. Robinson | 600 00 |
| "Emmett Smith | 1,829 15 |
| "A. Q. Bateman | 1,962 78 |
| "W. R. Harper | 166 69 |
| "John S. Jeffries, Jr. | 600 65 |

"3. We the jury find that the owners of the following claims notified the trustees of their acceptance under the deed of trust, before the service of the writ of garnishment on the trustees, to wit: State National Bank, Merchants National Bank, Farmers and Mechanics National Bank, D. W. Humphries, H. C. Poythress, W. B. Robinson, John S. Jeffries, Jr., and D. H. Kernaghan; and we the jury find that the owner of the following claim did not notify the trustees of its acceptance under said deed of trust until after the writ of garnish-

ment was served, to wit, the Traders National Bank, through H. C. Edrington, president; and we find that the evidence does not show that the owners of the other claims named in the deed of trust gave any notice of their acceptance before the writ of garnishment was served.

"4. We the jury do not find from the evidence that the primary intention and purpose of Bateman & Bro., in making the deed of trust at the time they made the same, was to hinder, delay, or defraud creditors; and we the jury do not find that any of the beneficiaries had notice, at or before the time the deed of trust was made, that the primary intent or purpose of Bateman & Bro. in making the deed of trust was to hinder, delay, or defraud creditors. We do not find that any fictitious or fraudulent claim was included in the deed of trust.

"5. We the jury find that all the charges in the expense account were reasonable and necessary."

Various errors are assigned to the charge submitting these issues, including the paragraphs following:

"10. You are instructed, that if you believe from the evidence that the primary purpose and intent of Bateman & Bro. in making the deed of trust was to hinder, delay, and defraud their creditors not named in the deed of trust, and that D. H. Kernaghan and W. M. Harrison, or either of them, had notice at or before the execution of the deed that such was the primary purpose and intent of Bateman & Bro., then it will be your duty to find the deed of trust fraudulent and void, even though you should find that a secondary purpose and intent in making the deed of trust was to secure the claims mentioned in the deed of trust; but the mere fact, if it be a fact, that such was the primary purpose and intent of Bateman & Bro. in making the deed of trust, would not authorize the jury to find the deed of trust fraudulent and void, unless the jury also find from the evidence that the trustees, or one of them, had notice of Bateman & Bro.'s purpose and intent, and had such notice at or before the deed of trust was executed and delivered to them.

"11. If you believe from the evidence that the primary purpose and intent of Bateman & Bro. in making the deed of trust was to secure the payment of the claims mentioned in the deed of trust, then the mere fact that the effect of the deed of trust was to hinder, delay, or defeat other creditors would not make it fraudulent and void; nor would the fact that the secondary purpose and intent of Bateman & Bro. was to hinder, delay, and defraud the other creditors (if you find that such was their secondary purpose and intent), even though known to the trustees at the time, render the deed of trust fraudulent and void."

        *     *     *     *     *     *     *     *     *

"36. The court next instructs you to find from the evidence a true and correct answer to the following question, to wit: Was the primary intention and purpose of Bateman & Bro., in making the deed of trust,

to delay and defraud the other creditors of Bateman & Bro., and was the intent or purpose, if any, of preferring and securing the creditors named in the deed of trust only a secondary or incidental matter; and if so, did either of the beneficiaries in the deed of trust have notice at the time the deed of trust was made that such was the primary intention of Bateman & Bro., and if so, which one or ones had such notice?"

After bestowing upon these and cognate charges that consideration which the magnitude of the interests involved seemed to require, we have reached the conclusion that they do not contain a plain and correct statement of the law applicable to the facts bearing upon the vital issue in the case; and that, when read in connection with the rest of the charge, and in the light of the entire record, it can not be affirmed that they did not have a tendency to confuse and mislead the jury

The last clause of the eleventh paragraph distinctly announces the proposition that Bateman & Bro. might have entertained with impunity the purpose and intent to defraud their creditors, even though known to the trustees at the time of their accepting the trust, provided only this purpose and intent was secondary, and not the primary purpose and intent.

We are of the opinion that the intent to defraud is condemned alike in law and in morals, without reference to whether it be primary or secondary in character. It has a well defined meaning, both in law language and in common parlance, and vitiates everything into which it enters, except as against those not privy thereto. Though subordinate in character, it is essentially wrongful, including something more than the natural consequences of the legitimate purpose to secure the payment of just debts, and therefore, when it enters into, taints that purpose also.

There is a clear distinction between an intent on the part of a failing debtor, by means of a proper preferential conveyance, to delay, or even defeat, the collection of the debts of creditors not so preferred, and an intent to *defraud* them. The one intent is to do what the law permits; the other, what it condemns. As said by Chief Justice Stayton, in Ellis v. Valentine, 65 Texas, 546, citing Bump on Fraudulent Conveyances, 20: "The hindrance and delay contemplated by statute has in it the element of fraud, and if a hindrance or delay be found in any case to be free from this element, then it is not of that character which, under the statute, vitiates conveyances;" and further, reiterated also by him in Haas v. Kraus, 86 Texas, 689: "What it is lawful to do can not become unlawful by reason of the fact that it is done through a motive or with an intent not friendly to all creditors; a hindrance or delay which does not operate as a fraud upon other creditors is not that prohibited by law."

At the basis of these statements of the law is the well founded assumption that fraud is necessarily a violation, rather than the exercise, of a right. The intent to defraud, therefore, is invariably an intent to

do a wrong. It is true, a case might be imagined in which the conveyance would be upheld, though prompted by a fraudulent motive, as, for instance, when executed under such circumstances that, if permitted to stand, it could not have the effect fraudulently intended; but this on the ground that a wrongful intent, apart from a damaging act, is not to the prejudice of any right.

The law applicable to the phase of a lawful preference of creditors was correctly given, at the request of counsel for the Farmers and Mechanics National Bank, in the terms following: "A debtor, though insolvent, has a right to prefer a creditor in the payment of a just and honest debt, and the mere fact that a creditor of an insolvent debtor secures, under a deed of trust made by such insolvent debtor, a preference over other creditors equally meritorious, and that the transfer of the property effected by such trust deed has the effect of delaying and hindering other creditors not secured by the terms of such trust deed in the collection of their just debts, and this was so intended by such debtor, and that intention was known to such preferred creditors, will not vitiate the trust deed."

By the charges under consideration, which went a step beyond this, the jury had a right to infer that something additional was meant.

The trustees occupied the dual position of trustees and beneficiaries; that is to say, Kernaghan was one of the preferred creditors, and Harrison represented another; and if the conveyance was made with a fraudulent intent, though subordinate in character, and they accepted its benefits with knowledge of that intent, undertaking thereby in the capacity of trustees to aid Bateman & Bro. in the accomplishment of such fraudulent purpose, it seems to us that they could not, at least as to these debts, escape the consequences of the fraud.

Without intimating that the evidence warranted any inference of fraud, we think it can not be said that it did not raise the issue, and that, too, upon the subordinate rather than the main purpose—which the evidence tended to show was to pay debts. We will not undertake to anticipate the particular manner in which, if at all, the jury might have inferred that it was to have been accomplished. The inventive genius of a covinous intent often renders the task of tracing the insidious method devised by the failing debtor to thwart the just pursuit of the creditor a difficult one.

True, in the fourth special finding the jury say: "We do not find that any fictitious or fraudulent claim was included in the deed of trust." While this result may have diminished the scope of their inquiry on the issue of fraud, it did not close all possible avenues. Real debts, however well fortified by age and family history, when held by near relatives or intimate friends, may become by tacit understanding the convenient means of securing to the debtor through a trust deed an advantageous compromise, or of otherwise affording him ease. Mixon v. Symonds, 2 Texas Civ. App., 629; 21 S. W. Rep., 772; Bank v. Ridenour (Kas.), 27 Pac. Rep., 150, and cases there cited.

The amount of property conveyed and the manner of its contemplated conversion and appropriation may also afford the means of an unlawful advantage to the debtor. To avoid the disastrous consequences of an impending attachment, a debtor having large assets might execute a trust deed with preferences, with the primary or main purpose of securing the payment of just debts, and yet in the manner of doing this attempt, as a secondary consideration, to secure to himself an unlawful advantage. The creditor accepting the benefits of such conveyance with knowledge, actual or constructive, of this subordinate unlawful purpose, and thus aiding in its accomplishment, becomes privy to the fraud, and as to him the conveyance is void.

The mere fact, however, that some of the debts included in a deed of trust to secure several different creditors may be fictitious and fraudulently inserted, will not invalidate the conveyance, in so far as it secures the debts of bona fide creditors accepting without notice of the fraud. Rider v. Hunt, 6 Texas Civ. App., 238; Haas v. Kraus, 6 Texas Civ. App., 665; Id., 80 Texas, 689; Solomon v. Wright, recently decided by us.

These decisions, however, had not been announced when the trial below was had; but on account of the refusal of writ of error in Haas v. Kraus, supra, they must be held, we think, to have overruled Simon v. Ash, 1 Texas Civil Appeals, 202, which seems to have been followed on that trial, though not to the prejudice of appellants.

The tenth paragraph of the above quoted charge seems to make notice vel non to the trustees of the "primary intent" to defraud conclusive, not only as to them, but as to the entire conveyance. We do not so understand the rule. Bank v. Ridenour and Solomon v. Wright, supra.

So far, however, as notice of this "primary intent" was concerned, this error seems to have been corrected in another portion of the charge, submitting to the jury the issue of notice on the part of the accepting creditors; but they were erroneously directed by this charge to consider whether these creditors had such notice at the time the conveyance was made, instead of at or before acceptance by them severally; and their assent to the conveyance should not have been made to depend solely upon their giving notice thereof to the trustees. Milling Co. v. Eaton et al., 86 Texas, 401.

In submitting the items of expense claimed by the trustees, we doubt whether the court should have instructed the jury that it was the duty of the trustees to pay the taxes on the stock of goods in question for the year 1890; but think rather that it should have been left to them to determine whether, in making this payment under the circumstances, and especially in view of the advice of counsel, they acted as persons of ordinary prudence would have done under similar circumstances in the preservation and management of a trust estate.

We are also of the opinion, that that part of the charge which sought to have the jury ascertain the correct amounts of the several

debts at the date of the conveyance, without reference to whether any of them were fictitious or fraudulent, could not have served any useful purpose in this case, and that it probably had a tendency to confuse the jury.

We think also that there is some force in the criticism of appellant's counsel, that the charge as a whole undertook to treat too much in detail the minor and inferential issues developed during the progress of the trial; and that possibly, as indicated by the Scotch verdict returned, too much prominence was given to appellant having the burden of proof.

These several features of the charge are adverted to in view of another trial.

We do not find it necessary to decide whether the special verdict warranted the judgment discharging the garnishees. It failed to fix the amount of the claims of the accepting creditors at the time of the trial, or to furnish any data by which it could be ascertained. It only specified the correct amount at the date of the deed, and did not determine the rate of interest or the maturity of the several claims. The evidence tends to show that many of the claims were not then due, and that they bore interest from different dates. The verdict establishes the validity of the conveyance, but whether or not there was a surplus after payment of accepting creditors, or the amount thereof, it leaves undetermined.

It may be that it was incumbent on appellants, seeking a recovery, to have the verdict ascertain all the necessary facts. However this may be, in view of the decisions cited above, rendered since the trial below, and having an important bearing on this feature of the case, it would seem to be just to all parties that the cause should be remanded for a full determination of the issues involved.

If, however, appellant's desire to have this issue passed upon is sufficiently strong to induce them to waive other errors, it will in that event be done.

Mainly on account of the prominence given by the charge to the immaterial distinction between the primary and secondary intent to defraud, whereby the latter was practically withdrawn from the consideration of the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered December 12, 1894.