Marvin B. Armstrong, Assignee, v. Ames & Frost Co. et al.

Delivered October 30, 1897.

**1.  Charge of Court—Requested Instruction Properly Refused.**

A requested instruction which, in so far as it is correct, is covered by the charges given, is properly refused.

**2.  Attachment—Grounds.**

The diversion by an agent for the sale of bicycles, under an agreement that the proceeds of sales by him should be paid over to his principal in payment of the amount due from him, of part of such proceeds to other purposes, shows such an intent to hinder, delay, or prevent the collection of the claim against him as will authorize the issuance of an attachment, even though no actual intent to defraud existed in fact.

**3. Wrongful Attachment—Action—Evidence.**

Plaintiff in an action for wrongful attachment is not prejudiced by the admission of testimony, in conformity with the allegations of defendant's answer, that at the time of the levy of the attachment, and for a long time prior thereto, the attachment defendant had been disposing of its goods at retail, in violation of its charter, which authorized exclusively a wholesale business.

**4. Same—Same—Charge of Court.**

Nor was there prejudicial error in submitting a special issue to the jury, in conformity with these allegations and the evidence supporting them, as to whether the attachment defendant had sold the goods at retail.

**5. Same.**

Nor was there prejudicial error in refusing a special charge requested by the plaintiff, to the effect that acts beyond the charter powers of the attachment defendant, in the sale of goods at retail, did not necessarily constitute a disposition of its property with intent to defraud, and that evidence of the same was only admitted for its general bearing and significance, if any, on the issue of the fraudulent disposition of the property.

**6. Evidence—Admission—Harmless Error.**

Error in admitting evidence as to the amount due from plaintiff's assignor to defendant, as shown by books which the witness did not keep and did not know to be correct, is harmless to plaintiff, where the amount due is fully shown by other evidence.

**7. Attachment—Wrongful Issuance—Burden of Proof.**

Plaintiff in an action for wrongful attachment has the burden of proving that the attachment was wrongful.

**8. Action for Wrongful Attachment—Evidence—Value of Property.**

Evidence that stockholders in defendant corporation in an attachment suit purchased from the attachment plaintiff the attached property for $8500, and that in the following year they sold only one-fourth of the property, is admissible in an action against the attachment plaintiff to show that the property was not worth $16,952, alleged to be the market value.

APPEAL from Tarrant.   Tried below before Hon. W. D. HARRIS.

*R. W. Flournoy*, for appellant.—1. The words "hinder," "delay," and "defraud" are not synonymous, and a charge which confounds their meanings is erroneous.   An intent to hinder or delay is not necessarily an intent to defraud, nor is every intent to hinder or delay creditors unlawful. It is only such intent with fraudulent purpose that is unlawful.   Ellis v. Valentine, 65 Texas, 332; Sugar Refining Co. v. Harrison, 29 S. W. Rep., 500; Haas v. Krause, 86 Texas, 687; Waite on Fraud. Conv., 2 ed., sec. 11; Hickox v. Elliott, 22 Fed. Rep., 21; Pilling v. Otis, 13 Wis., 497; Eaton v. Wells, 18 Minn., 369; Crow v. Beardsley, 68 Mo., 439.

2. The court erred in that portion of his charge to the jury wherein he instructed them, in effect, that the burden of proof throughout the whole case was on the plaintiff to show that the affidavit for attachment was untrue, because when plaintiff had negatived the ground for attachment alleged in the affidavit, and had made a prima facie case of no fraud, the burden of proof shifted to defendants to show that, under the terms of the contract between F. H. Collins Company and Ames & Frost Company, F. H. Collins Company had disposed of some part of the proceeds of sales under the contract, with intent to defraud Ames & Frost

Company. Blum v. Strong, 71 Texas, 324; Odom v. Woodward, 74 Texas, 46.

*Humphreys & McLean,* for appellees.—The affidavit for attachment is presumed to be true, and in an action for damages on the attachment bond, on the ground that the writ was wrongfully sued out, the burden of proof is on the party bringing such damage suit, to show that the affidavit is untrue and the attachment wrongfully sued out. The testimony adduced by appellant on the trial of this suit was wholly insufficient to show that the F. H. Collins Company had not disposed of its property in part with intent to defraud its creditors, as alleged in said affidavit; and on the other hand, the testimony fully supported and justified the allegations of the affidavit. Frank v. Tatum, 26 S. W. Rep., 900.

TARLTON, Chief Justice.—On December 24, 1894, Ames & Frost Co. brought suit against the F. H. Collins Co., a private corporation organized under the laws of the State of Texas, and conducting a mercantile business in the city of Fort Worth. Plaintiff caused a writ of attachment to be levied upon the property of the F. H. Collins Co. One H. H. Fulton, the agent of the Ames & Frost Co., made the affidavit in attachment, alleging an indebtedness in the principal sum of $9673.19, and in the further sum of $127.61 interest; and further alleging, among other matters not necessary to mention, "that said defendant has disposed of its property in part with intent to defraud its creditors."

The writ of attachment was levied upon the entire stock of merchandise, store fixtures, and furniture belonging to the F. H. Collins Co., the property being invoiced by the sheriff at the sum of $16,952.03, and its value assessed by that officer at $8476. The property was subsequently sold under an order of sale issued in the cause, and bought by Ames & Frost Co. for the sum of $6600. Afterwards judgment, with foreclosure of attachment lien, was recovered in the sum of $10,022.88 and costs, which was credited with the proceeds of the property previously sold.

On December 28, 1894, the F. H. Collins Co. executed to Marvin B. Armstrong a general assignment, exacting releases, under the provisions of Title 7a, Sayles' Civil Statutes. The assignee, appellant herein, on January 26, 1895, brought this suit against Ames & Frost Co. and the sureties on its attachment bond to recover the value of the stock of goods which had been attached, alleging that the property had been wrongfully seized and converted by means of the attachment, and that the affidavit for attachment, in so far as it charged that F. H. Collins Co. had disposed of its property in part with intent to defraud its creditors, was untrue.

A trial of the case, had on November 28, 1896, resulted in a verdict and judgment for the defendants, appellees in this court. The jury in their verdict sustained the allegation in the attachment affidavit that the F. H. Collins Co. had disposed of its property in part with intent to defraud its creditors; and as this finding rests upon sufficient evidence, we are constrained to approve it.

*Opinion.*—The finding by the jury averse to the appellant on the paramount issue of fact concerning the fraudulent disposition by the F. H. Collins Co., as charged in the affidavit for attachment, will require an affirmance of the judgment, unless error prejudicial to the appellant was committed by the court in its instruction to the jury or in its action regarding the admission of evidence. Hence, we proceed to consider the several assignments of error complaining of the court's action in the respects indicated.

1. In submitting the issue of the fraudulent disposition by the F. H. Collins Co. of its property, as charged in the affidavit for attachment, the court in its principal charge gave the following instruction: "You are instructed that Ames & Frost Co., by its contract with F. H. Collins Co., under which it sold goods to F .H. Collins Co., had no lien on the wheels sold by it to F. H. Collins Co.; and if you believe from the evidence in this case that said Collins Co. made no other disposition of the wheels bought by it from Ames & Frost Co. than to apply the proceeds of the same to the payment of its just debts, whether the debts owing to Ames & Frost Co. or to any other person or persons, and did not dispose of any of them with any intent to defraud Ames & Frost Co. nor any other creditor, and find also that it had not prior to the time the attachment was sued out.disposed of any of its other property other than what it obtained from Ames & Frost Co. with intent to defraud any of its creditors, then you will, in answer to the first question, find that the affidavit was untrue at the time it was made."

In connection with this instruction, the court granted the following special charge requested by the appellee: "You are charged that any act done by a debtor with the intention to hinder or delay his creditor in the collection of his debt, owing by the debtor to the creditor, and which has that effect, is a fraud on the rights of the creditor. If in this case you find that F. H. Collins Co. had disposed of any notes or money, the same being the proceeds of the sales of goods by the Ames & Frost Co. under the contract which has been introduced in evidence, otherwise than is provided in said contract, and you further find that said F. H. Collins Co. intended by such disposition of said notes or money to hinder or delay or prevent said Ames & Frost Co. from collecting their debt, then the affidavit for attachment would be true, and you will so find."

In this connection the court also refused a special instruction requested by the appellant, to the effect that, in order to find for defendants on the issue as to whether or not the ground for attachment, as alleged in the affidavit, existed, the jury must believe from the evidence that F. H. Collins Co. disposed of some portion of its property with intent to defraud its creditors; and that if said F. H. Collins Co. did not dispose of any portion of its property with such intent, the jury should find for plaintiff on such issue, though they might believe from the evidence that said F. H. Collins Co. failed to comply with its contract with Ames & Frost Co., and disposed of goods bought from said Ames & Frost Co.

to other persons, with no intention or purpose to pay Ames & Frost Co. therefor.

We overrule the tenth and eleventh assignments of error, first urged in the appellant's brief, complaining of the action of the court in granting the special instruction requested by the appellees, and in refusing that requested by the appellant. The propositions of the latter, in so far as they were proper, were covered by the main instruction herein above quoted. The evidence tended to raise the issue presented by the special instruction of the appellees. The first proposition embodied therein should, in its application, be referred to the facts stated in its concluding proposition.

The evidence upon which the special instruction rests consisted in the contract between the F. H. Collins Co. and Ames & Frost Co., admittedly executed February 2, 1894, and upon the testimony of the agent of the latter company, tending to show that, in violation of the terms of the contract, the F. H. Collins Co. had appropriated the goods referred to in the instruction to a purpose other than that specified in the contract, and with the intention to hinder, delay, or prevent the appellee from collecting its debt. By the terms of this contract it appeared that, in consideration of an order for bicycles to be shipped during the season of 1894 by the appellee to the F. H. Collins Co., and of an agreement by the appellee to give to the F. H. Collins Co. an agency for the sale of Imperial wheels for 1894, the F. H. Collins Co. undertook to give to the appellee on the first of each month a three months note, bearing 8 per cent interest, for all goods shipped the previous month; that as collateral security to the notes thus given, the F. H. Collins Co. further undertook to give to the appellee, as soon as received, all first due customers' notes received for sales of the machines, and all cash received on such sales, the cash to be not less than $25 for each wheel; that these customers' notes were to be made payable, by the indorsement of F. H. Collins Co., to the order of Ames & Frost Co., and were to be forwarded to Ames & Frost Co. as soon as received by F. H. Collins Co.; that Ames & Frost Co. were to indorse such paper for collection to F. H. Collins Co., which undertook to collect the paper and to deliver the proceeds, with the cash received from the sale of machines, up to the cost of the wheels, upon the note first falling due. It was further agreed that the proceeds of all such collateral paper were to be applied by the F. H. Collins Co. to the liquidation of their notes to the appellee; that no note was to be renewed by the appellee more than once; that the payment of all cash received on account of machines sold should not be deferred longer than the first of each month after the sale; that the F. H. Collins Co. should use all diligence in the sale of machines for cash, and in the collection of such paper indorsed to it for collection; that if it should find, ten days before the maturity of any unrenewed note it had given Ames & Frost Co., that the amount received from the sale of machines and from the collection of sales paper should not be sufficient to pay such unrenewed notes, it might at its option notify Ames & Frost Co., and give a new note at three months, bearing 8

per cent interest, for the amount of the deficiency, the new note to arrive at the office of the Ames & Frost Co. seven days prior to the maturity of the note to be taken up, in which event Ames & Frost Co. agreed to send check for said sum or to be drawn on for it, to be used only in the payment of the notes to Ames & Frost Co.; that all notes once renewed were to be paid at maturity; that the machines when sold at retail were to be sold as far as possible for cash, but when on payments one-third of the selling price of the wheels should be paid in cash by the customer, the balance in payments of not less than $15 per month, secured by chattel mortgage on the machines sold, properly filed and recorded.

The testimony of the agent, Fulton, was to the effect that when the attachment was sued out by the appellee, more than $9000 worth of goods had been furnished by it to the F. H. Collins Co., under the terms of the foregoing contract; that only $2855 worth of wheels and $739 worth of customers' notes were producible by the F. H. Collins Co. on demand by him for an accounting; that $6000 worth of the goods shipped under the contract had disappeared from the F. H. Collins Co.'s stock, and that the manager of the company could give no satisfactory or definite explanation of the disposition which had been made of the sum represented by this discrepancy.

It thus appears, contrary to the proposition urged by the appellant, that there was testimony supporting the special instruction complained of.

Under the second proposition advanced by the appellant under these assignments, we proceed to consider whether the facts set out in the special instruction constitute a fraudulent disposition of property by the debtor, within the meaning of the attachment statute.

Determining the rights of the Collins Co. and of the appellee with reference to the goods referred to in the charge by the terms of the contract in question, we are of the opinion that an obligation—moral and legal—rested upon the Collins Co. to appropriate the proceeds of the goods in accordance with the stipulations of the contract; and that a diversion of these proceeds, made by the Collins Co. with intent to hinder, delay, or prevent the appellee from the collection of its debt, was violative of this obligation, was a wrong upon the appellee, and constituted within legal contemplation a fraud upon its rights. A diversion of these proceeds with such an intent should be regarded as the infliction of an injury upon the creditor entitled to them under the specific terms of its contract.

It would not, we think, be essential that fraud involving the existence of conscious turpitude should coexist with the intent to hinder, delay, or prevent, in order to justify the injured creditor in resorting under these circumstances to the remedy of an attachment. When, as in this instance, the jury were required to believe, in order to find a verdict for the plaintiff, that the Collins Co., in breach of the trust reposed in it, and evidenced by its solemn contract, and in violation of its obligation, had diverted the proceeds of the goods, which it had undertaken to account for or to remit to the appellee, to a purpose other than that contemplated by this contract, and with the intent to hinder, delay, or prevent the appellee

from the collection of its just demand, they were in legal contemplation required to find that the Collins Co. intended by this diversion to defraud the appellee; and this without reference to whether the intent to defraud in its more comprehensive sense did or did not exist.

Under the terms of the contract in question, and to the extent of the notes and money referred to, we think the Collins Co. had relinquished the right which our law accords a failing debtor, of preferring his creditors.

We regard the conclusion here announced as consonant alike with reason and the course of decision in this State. Thus, in Gallagher v. Goldfrank, 75 Texas, 562, the execution of a mortgage by a debtor for the expressed purpose of securing a creditor, but which contained a provision authorizing the mortgagee to sell the goods in due course of trade and at customary prices, was held to be such an act as would constitute a disposition of property with intent to defraud, because the effect of the provision was to hinder and delay creditors. The court did not stop to inquire whether a wicked or covinous intent prompted the execution of the instrument, but held the act to come within the contemplation of the attachment law, because of its necessary effect in hindering and delaying creditors. In other words, under the circumstances stated, the expression "hinder and delay" was regarded as synonymous with the expression "to defraud." See also Gregg v. Cleveland, 82 Texas, 187.

It will be noted that we are not considering a case in which there is question of the conduct of a creditor who accepts goods in payment of his debt by means of a transfer from a debtor preferring him, and by such preference hindering, delaying, and preventing other creditors. To a question of the latter character, where the issue is between such a creditor and other creditors assailing the transfer, and where there was no restriction by contract, as in this case, are the authorities cited by the appellant applicable. Ellis v. Valentine, 65 Texas, 532; Refining Co. v. Harrison, 29 S. W. Rep., 500.

2. No prejudicial error was committed by the court in admitting testimony in conformity with the allegations of defendants' answer, that at the time of the levy of the attachment, and for a long time prior thereto, the F. H .Collins Co. had been disposing of its goods at retail, in violation of its charter powers, which authorized exclusively a wholesale business.

Nor was there prejudicial error in submitting a special issue to the jury in conformity with these allegations and the evidence supporting them, as to whether the Collins Co. had sold the goods at retail; nor in refusing the special charge requested by the plaintiff, to the effect that acts beyond the charter powers of F. H. Collins Co. in the sale of goods at retail did not necessarily constitute a disposition of its property with intent to defraud, and that evidence of the same was only admitted for its general bearing and significance, if any, on the issue of the fraudulent disposition of property.

We do not agree with counsel for appellant that, because of the admission of this evidence, or the submission of this issue, the jury could reasonably have concluded that the company had forfeited all claim to

the protection of the courts of the State. On the contrary, the jury were instructed in the main charge of the court, as we have seen, that the plaintiff, as the assignee of the Collins Co., would recover if the allegation in the affidavit charging a fraudulent disposition of its property was untrue.

3. In his direct examination H. H. Fulton, the agent and a witness for the defendants, testified that the claim of his company against the Collins Co. was for about $9600; that the indebtedness was incurred for bicycles; that the Ames & Frost Co. manufactures bicycles; and that the claim he had was for bicycles sold to the Collins Co. under a contract, referring to the contract of February 2, 1894. On cross-examination this witness was asked the following question: "How much did F. H. Collins Co. buy from Ames & Frost Co. in wheels during the year 1894, between the making of this new contract on February 2 and the time of the levy of the attachment?" To which he replied: "They bought during the year 1894 between $9000 and $10,000, I know." On further cross-examination he testified: "I know that to be a fact. I have got a memorandum of it which I got a few days ago from the ledger, from the actual account in the ledger. I didn't put it in the ledger; can't say that I had anything to do with keeping the ledger. Yes, I recognized some of my own figures as I went along. I didn't sell these goods shipped in 1894. I was not the shipping clerk."

Thereupon plaintiff's counsel moved the court to exclude the evidence that F. H. Collins Co. bought wheels of Ames & Frost Co. during said time to the amount of between $9000 and $10,000, because his evidence showed that he did not know that to be a fact, except from the books, and that he was not qualified to testify from the books of the defendant, and because the books were the best evidence of the facts sought to be proven, and were not offered in evidence, and the books referred to were not shown to be the books of the original entry of the transaction, and were not shown to be correctly kept. The court refused the motion to exclude this testimony, on the ground that the defendant did not elicit it from Fulton, but that it was elicited by plaintiff on cross-examination, and in such manner as that the plaintiff did not have a right to have it excluded.

We think that, if the reason given by the court for refusing the motion be unsound, its action, in view of all the evidence, was not prejudicial to the appellant. The amount due by the Collins Co. to the appellee was elsewhere fully established as in the sum of $9673.19, with interest. The amount of the judgment rendered shortly after the institution of the attachment proceedings was in the sum of $10,022.88, manifestly representing the principal and interest of the demand. F. H. Collins, the manager of the Collins Co., testified once on direct and once on cross-examination that his company purchased $9000 worth of goods from Ames & Frost Co. between February, 1894, and the date of the attachment. Of the goods thus bought, Collins admits that about $7000 or $8000 worth was for wheels purchased from the appellee company in 1894.

The evidence complained of was hence only cumulative as to the value

of the goods purchased and the amount of the indebtedness. The point of objection must therefore be confined to the fact that the witness testified to the character of the goods, viz.; that they were wheels. A fair interpretation of his entire statement in his direct and his cross-examination shows that, conceding the amount of indebtedness to be as stated by him; the goods representing that indebtedness were naturally and quite necessarily wheels or bicycles, because he stated in his direct examination that the goods in which his company dealt were goods of this character, and it was not necessary that he should examine the books of the concern or produce them, in order to know that fact. Besides, Collins, the manager, stated that the wheels purchased by his company during the year 1894 were in value between $7000 and $8000. If we accept his statement as to the value of the wheels thus purchased, manifestly under the contract, the deficiency in the accounting by his company would not be removed, but would simply be reduced $1000 or $2000, which could not reasonably affect the grounds for the attachment. The fact of the deficiency would yet remain, which would justify the affidavit. The lessened degree of the deficiency would not have been sufficient to affect the controlling question on the issue of fraud.

4. The burden rested upon the plaintiff to establish that the attachment was wrongful, and the court did not err in thus charging, though it may not have been required to do so.

5. The plaintiff sued to recover the sum of $16,952.49 as the market value of the merchandise seized by virtue of the attachment at the time and place of the levy. It appears that the property was sold on January 26, 1895, under preliminary order of sale, to Ames & Frost Co., for the sum of $6600. We think that the court properly overruled appellant's objection to the testimony of F. H. Collins on cross-examination, to the effect that thereafter Elmon Armstrong and Warren Collins, stockholders in the F. H. Collins Co., bought the property levied on from Ames & Frost Co. for $8000 or $8500, and that he, as manager for the purchasers of the attached property, sold only one-fourth thereof during the year succeeding the attachment. This testimony, in our opinion, was relevant upon the issue of the value of the goods at the time of their seizure. It tended to show that the goods were unsalable, and were of less value than claimed by the plaintiff. Openheimer v. Sweeny, 63 Texas, 426.

6. We find it unnecessary to decide, and we abstain from considering, the cross-assignment presented by the appellee, urging the proposition that an insolvent private corporation in Texas, which has ceased to carry on its business, and which does not intend to resume business, may not, as in this case, make an assignment for the benefit of creditors conditionally exacting releases.

The judgment is in all things affirmed.

*Affirmed.*

Writ of error refused.

Hunter, J., disqualified and not sitting.