## E. Y. BROWN v. W. T. HUDSON ET AL.

Delivered November 28, 1896.

**1. Practice on Appeal—Who May Assign Cross-Errors.**

Where the plaintiff in an action is successful as to some of his adversaries and unsuccessful as to others, and on appealing from the judgment makes all of them obligees in his bond, one against whom he was successful is entitled to urge cross-assignments of error to the judgment, though he has not himself appealed.

**2. Intervention—Service on Defaulting Defendants.**

In an action to foreclose a chattel mortgage, where judgment by default has been rendered in favor of the plaintiff against the defendants, after a written waiver of citation filed by them subsequent interventions will not be stricken out for want of service on them.

**3. Chattel Mortgage—Registration.**

A chattel mortgage is void as to the creditors of the mortgagor when it is not registered in the county of his residence, though it be registered in the county where the property is situated.

**4. Range Levy—Return Not Fatally Defective.**

Though defective in not showing just how the levy was made, the following return on a writ of attachment does not on its face show a void levy: "Came to hand * * * and executed * * * by attaching all of the cattle * * * in the following brand * * * and leaving same on the range."

**5. Attachment Lien on Cattle—Removal to Other Counties.**

Where a valid attachment lien has been fixed upon cattle, the person in possession thereof cannot himself afterwards remove them to other counties and claim a discharge from the lien.

**6. Range Levy on Cattle—Number in Each Brand Not Specified.**

A range levy is not void because the number of cattle in each brand is not specified, where the return states that 2000 head in three given brands were levied upon, it not appearing that the levy covered less than the whole number in all of the brands.

**7. Same—Return—"More or Less."**

The expression "more or less," used in the return on a range levy on cattle, in connection with the number designated, does not introduce an element of uncertainty, but tends rather the other way.

8.  Pledge of Cattle—Insufficient Change of Possession.

It is not a sufficient change of possession to create a valid pledge of cattle running on the range, when the agreement is that the owners shall continue to look after them under the direction of the pledgee.

APPEAL from Tarrant.    Tried below before Hon. W. D. HARRIS.

*Crane & Ramsey*, for appellant.—1.    Randolph and. Carpenter's pleas of intervention should have been stricken out, because they were filed after judgment by default against the Hudsons, the makers of the note in controversy, and without answer filed on their part, and therefore no judgment could be rendered in favor of the interveners against said Hudsons, without notice.    Bryan v. Lund, 25 Texas, 98.

2.    The return on an attachment which simply states that the property has been attached is insufficient.    It should show the acts claimed to constitute the levy of the attachment.    Drake on Attachment (7 ed.), sec. 205; Gibson v. Wilson, 5 Ark., 422; Desha v. Baker, 3 Ark., 509; Jeffreys v. Harvie, 38 Miss., 97; Crizen v. Goren, 41 Miss., 563; Ezelle v. Simpson, 42 Miss., 515; Rankin v. Dulaney, 43 Miss., 197; Moore v. Coots, 43 Miss., 225; West v. People's Bank, 67 Miss., 729; Stockton v. Downie, 6 La. Ann., 581; Page v. Geners, 6 La. Ann., 549; Chrisman v. Swisher, 4 Dutch., 149; Bannister v. Higginson, 15 Me., 73, 32 Am. Dec., 134.

3.    The cattle pledged being in possession of the agent of W. T. Hudson, the owner, at the time they were pledged, the plaintiff had a right to employ the same agents to retain possession of them for him. Jones on Chattel Mortgages, 180-184; Bismark v. Bolster, 92 Pa. St., 123; Moore v. Powers, 7 N. H., 286; Gaur v. Hand, 92 Ill., 314; Wheeler v. Nichols, 32 Me., 233; Carpenter v. Snelling, 97 Mass., 452; Whitaker v. Sumner, 20 Pick., 399; Tucksworth v. Moore, 9 Pick., 346; 18 Am. & Eng. Ency. of Law, 595-8.

*Robertson & Robertson, J. M. McCormick* and *Pierce B. Ward*, for intervener Randolph.

*Lumpkin & Gillette*, for intervener Carpenter.

*Poindexter & Padelford* and *S. T. Camp*, for appellee Walters.— 1.    The law presumes that officers of courts have performed their duty.    And in a collateral proceeding the law will presume that an officer levying an attachment performed his duty and levied it in accordance with the law; and the original return in this case stating that the officer had executed said writ by attaching certain property, that was sufficient in a collateral proceeding, especially after the court out of which the attachment was issued had rendered a judgment foreclosing said attachment.    Porter v. Pico, 55 Cal., 170; Davis v. Baker, 72 Cal., 494; Boyd v. King, 33 N. J. Law, 134; Miller v. Fay, 40 Wis., 633; Lathrop v. Blake, 23 N. H., 46; Prather v. Chase, 4 Bretw., 206;

Anderson v. Goff, 41 Md.,.601; Walker v. Bickman, 122 U. S., 324; Coffee v. Silvan, 15 Texas, 359; Lewis v. Quinker, 2 Met. (Ky), 284; Drake v. Mooney, 31 Vt., 614; Reedus v. Wofford, 12 Miss., 579; Baldwin v. Conger, 9 Sm. & M., 516.

2.   Control of property by a person is not actual possession such as is meant by the statute when it states that actual and continued posses- sion of property must be delivered by the grantor or pledgor, in order to be valid against the creditors of the pledgee or grantee.   Hesthol v. Myers, 53 Cal., 625; Gray v. Cary, 48 Cal., 208.

STEPHENS, ASSOCIATE JUSTICE.—In December, 1884, W. T., A. J. and N. S. Hudson executed their joint and several promissory note to W. T. Carpenter in the sum of $24,000, and to better secure its pay- ment W. T. Hudson, who resided in Bosque County, Texas, executed a chattel mortgage upon his cattle then ranging in Throckmorton County, branded IX and some XI, of the estimated number of 1300. This mortgage was promptly registered in the latter county, but not in that of the mortgagor's residence.

Soon thereafter Carpenter pledged both. the note and mortgage to a bank in Fort Worth as security for a loan to him of $2500.   On De- cember 1, 1885, E. Y. Brown, at the instance of the Hudsons and Carpen- ter, in order to prevent an impending sacrifice of this collateral, made a loan to Carpenter of $2500 for twelve months which was used in re- deeming the collateral, by paying the debt to the bank.   The collateral paper thus redeemed was consequently pledged to Brown to better se- cure the $2500 note executed to him by Carpenter in this 'transaction, with the usual power of sale in case of default in the payment of the principal note.   It was further agreed between the Hudsons and Brown that the latter should have the control of the cattle, and that A. J. and N. S. Hudson should look after them for him upon the range.

W. T. Hudson and W. T. Carpenter, being indebted to Andy Wal- ters, were sued about and just before this time in Bosque County, and on December 12, 1885, 400 of the IX cattle were attached under pro- cess in that suit by the sheriff of Throckmorton County, through a range levy, which will be more fully stated when we come to consider its effect.   This suit resulted in a judgment on the 8th of February, 1888, against W. T. Hudson and Carpenter in the sum of $1532.40, to- gether with costs of suit, foreclosing the attachment lien on the 400 head of IX cattle.   Thereafter, September 27, 1889, the return of the officer upon the attachment writ was amended, under the directions of the court, upon motion, so as to state the facts showing a range levy in full compliance with the statute.

Carpenter made default in the payment of the $2500 note held by Brown, and the $24,000 note, with the mortgage securing its payment, was sold in accordance with the terms of the pledge, and Brown became the purchaser thereof.   Consequently, on May 8, 1888, Brown instituted this suit on the collateral note and to foreclose the mortgage against the

three Hudsons, and also against Andy Walters, alleging that Walters was setting up some sort of pretended claim to the cattle, and caused 200 of those levied on by Walters to be seized under sequestration process by the sheriff of Hardeman County, through a range levy in Cottle County, then attached to Hardeman for judicial purposes, and into which the Hudsons had by the permission or under the direction of Brown removed the cattle; and the cattle so seized were replevied by appellant Brown. In the course of the litigation, by an amended pleading, Brown declared also upon the transaction of December 1, 1885, as giving him, in addition to the rights of mortgagee, those of pledgee; the defendant Walters having assailed the validity of the mortgage upon the ground, among others, of its not having been registered in the county of the mortgagor's residence.

The Hudsons filed a written waiver of citation, and judgment by default went against them, August 28, 1888.

On February 5, 1887, L. V. F. Randolph recovered a judgment in the Federal Court at Dallas against W. T. Hudson, L. B. Hudson, A. J. Hudson and others in the sum of $52,926.66, upon which execution issued March 19, 1891, which was levied by the marshal of the Northern District of Texas, as recited in the statement of facts, "on about 2000 head of cattle, more or less, running at large upon their range in Haskell and adjoining counties. Said levy purported to have been made in the presence of H. J. Duly and L. C. Hearne. Said cattle branded IX and XI, commonly known as the lazy H and X, and also upon those branded NIK."

Under a writ of venditioni exponas, a sale of the cattle so levied on was made on the 9th day of October, 1891, at which Randolph became the purchaser and received the marshal's bill of sale; the return on this writ being as follows: "By virtue of the writ of venditioni exponas issued out of the Honorable United States Circuit Court for the Northern District of Texas, of date July 21, 1891, in the above entitled and numbered cause, and to me directed and delivered, I have this day, March 19, 1891, levied upon the interest of W. T. Hudson and A. J. Hudson in the following described property, to-wit: 2000 head of cattle, more or less, branded IX or XI and NIK, the number in each brand not known, as the levy made was a range levy, which I shall expose as the law directs on the 9th day of October, 1891, between the hours of 10 o'clock and 4 o'clock p. m., in the town of Haskell, Haskell County, Texas, before the court house door of said county, for cash to the highest bidder, to satisfy said writ of venditioni exponas."

Thereafter, April 30, 1894, Randolph intervened in this suit, setting up his rights as a judgment creditor and by virtue of said levy and sale, alleging the invalidity of the mortgage which Brown was endeavoring to foreclose, and charging a conspiracy between him and the Hudsons to defraud the creditors of the latter, and that they had prevented him from taking possession of the cattle so purchased at his execution sale, etc.

Carpenter also intervened, charging Brown with certain negligent and wrongful acts as the holder of the collateral, but his plea in intervention was not filed until more than two—and even four—years after the grievances complained of had occurred. To this plea, therefore, the statute of limitations was successfully and properly interposed, and no further notice need be taken of it.

No service of these pleas in intervention was had on the Hudsons, and appellant's motion to strike them out on this ground was denied.

Appellant Brown, in bar of Randolph's intervention, pleaded a judgment in the Federal Court in a garnishment proceeding as res adjudicata; but as that judgment was on its face so manifestly a voluntary non-suit on the part of Randolph, we content ourselves with the bare statement of that conclusion, without copying or commenting on the judgment.

The court submitted special issues to the jury, and in accordance with the verdict thereon entered judgment in favor of Brown against the Hudsons for the amount of the note sued on, with a foreclosure as against them of the mortgage lien on the cattle; but, holding the mortgage to be invalid as against Walters, whose range levy of December 12, 1885, was held to be sufficient to entitle him as a creditor within the chattel mortgage statute to urge its invalidity, gave judgment in his favor on the replevy bond for the amount of his debt, with interest and costs, which was less than the value of the property so replevied. Included within this verdict and judgment was an express finding against the pledge lien set up by Brown. The court also instructed the jury to return a verdict, not only against Carpenter on limitation, but also against Randolph, both on account of the plea of res adjudicata, and because his purchase of the cattle in October, 1891, "was insufficient, from uncertainty as to what was intended to be levied on, to pass title at such sale."

From this judgment Brown alone has appealed, seeking to have it reversed as to Walters and affirmed as to the other parties, but making all of them payees in the appeal bond. Randolph and Carpenter made no motion for a new trial, gave no notice of appeal, and executed no appeal bond, but filed cross-assignments of error. It is therefore insisted on the part of appellant that their cross-assignments cannot be considered, but we do not so understand the rules of practice. They were adverse parties to appellant in the court below, and he has included them as such within his appeal to this court by making them obligees in the appeal bond. The judgment rendered in the case was in part, and as against them, favorable to appellant, and, if he could, he did not, as we interpret the record, limit his appeal to so much of the judgment as was against him, so as to cut off cross-assignments of error as to the part in his favor. Duren v. Railway Co., 86 Texas, 287, and cases there cited; Hinzie v. Moody, 1 Texas Civ. App., 26, 20 S. W. Rep., 769.

The further preliminary contention on the part of appellant that the

pleas of intervention should have been stricken out, for want of service on the Hudsons, is equally untenable. They had already appeared by filing a written waiver of process, and were wholly insolvent. Whatever interest they had in the subject of controversy was merged in the judgment already rendered by default. The suits of the interveners were essentially against appellant Brown, and if it was in any way to his prejudice for the trial to proceed without service on the Hudsons, a reasonable postponement might have been had for that purpose. We should not be precluded from reversing a judgment against the interveners on the merits, merely because the court refused to strike out their pleas for want of service thereof on the Hudsons. In case of reversal of such judgment, that service may yet be had without prejudice to appellant.

We next consider the issues involving the respective rights of the parties.

That the mortgage which Brown sought to foreclose, while valid as to W. T. Hudson, was void as to his creditors, as that term is used in our chattel mortgage statute, does not seem to be seriously controverted. It was assailed upon other grounds besides its want of proper registration; but as we hold it void upon this ground, as to creditors fixing liens on the mortgaged property by legal process, the other grounds need not be discussed.

The important questions then are: 1. Were Walters and Randolph such creditors? 2. If so, was there a valid pledge of the cattle to Brown before they acquired attachment, judgment or execution liens thereon?

The following is the original return on the attachment writ in the suit of Walters against W. T. Hudson and W. T. Carpenter: "Came to hand this 25th day of November, 1885, at 6 o'clock p. m., and executed on the 12th day of December, 1885, by attaching all of the cattle owned by W. T. Hudson in Throckmorton County in the following brand, to-wit:  IX, and various marks, supposed to be about four hundred head, and leaving same on the range."

Unless this return on its face showed a void levy, it had the effect of creating a lien, not only as to Hudson, but also as to Brown and others not parties to the suit of Walters, no other evidence having been offered to show the nullity of the levy. We are of opinion that while the return is not full, in that it fails to show, as it should have done, just how the levy was made, it does not show on its face a void levy. Judgment was entered in pursuance of this levy, declaring and foreclosing the lien, prior to the institution of this suit. This was certainly conclusive against W. T. Hudson, the owner and mortgagor of the cattle.

It seems clear to us, therefore, that Walters was a creditor within the meaning of the law declaring unregistered mortgages to be void as to creditors, and as such entitled to attack the mortgage in question. Though Brown, not being a party to the Walters suit, might have con-

tradicted the return, and even the judgment itself, by showing that in fact no levy had been made, his failure to do so left the purported levy and judgment in full force. But Walters went still further, and showed by the subsequent amendment of the return that a proper range levy had in fact been made.

It is further contended however, that if a lien was ever fixed by the levy, it was lost by the subsequent removal of the cattle from Throckmorton County to Cottle, King and Haskell Counties. If we look to the evidence, it appears that according to the testimony of appellant this was done by the Hudsons while acting for him, and hence the familiar maxim that no one shall profit by his own wrong would seem to apply. It was certainly not the fault of Walters, for so soon as his judgment was obtained, an order of sale was issued to Throckmorton County and returned "No property found." A further answer to the assignment raising this issue is, that appellant failed to request the court to submit it to the jury.

Next, was Randolph a creditor within the meaning of the statute? He had obtained judgment, and had his execution levied as quoted above. Was that levy void on its face? We think not. If the 2000 cattle levied on included, as presumptively they did, all the cattle in the different brands specified, it was immaterial how many were in each brand. The purchaser at the execution sale had the right to gather them all under his bill of sale, and if appellant prevented him from so doing, and converted or squandered the cattle under a void mortgage, as was contended by Randolph, he was liable.

No effort was made to show that the Randolph levy covered less than the whole number of cattle in all the brands specified, so as to render it uncertain what particular cattle were designated in the levy. The phrase "more or less" in connection with the number designated, instead of introducing an element of uncertainty, tended rather to show that all the cattle in the given brands were included in the levy, though 2000 was the estimated number, and was probably an overestimate.

These conclusions are not believed to be in conflict with the decision in Gunter v. Cobb, 82 Texas, 599, though the tenor of that opinion may indicate a stricter construction of our range levy statute, which was intended to facilitate levies on that class of property, than we might feel disposed to sanction.

The remaining contention of appellant is that, notwithstanding the levies may have been valid, they should be subordinated to the prior pledge of December 1, 1885. But we are of opinion that no such pledge was shown. The mere agreement entered into as above stated, at Acton in Hood County, on that day, with reference to cattle then running at large on the range in Throckmorton County, to the effect that the Hudsons were to look after them under the direction and control of Brown, did not amount to a change of the actual possession from W. T. Hudson to Brown so as to create a valid pledge from that date.

The general rule is that there must be such change of possession to

create a valid pledge as would amount to a sufficient delivery in case of sale. Cattle running at large in the range can be delivered in only two ways, the one actual and the other symbolical. The latter is covered by the following statute: "Persons may dispose of stock animals of the kind mentioned in article 4940, as they run in the range, by the sale and delivery of the brands and marks; but in every such sale the purchaser, in order to acquire title thereto, shall have his conveyance or bill of sale of such stock recorded in the county clerk's office, in a book to be kept by him for that purpose, and such sale or transfer shall be noted on the record of original marks and brands in the name of the vendee or purchaser." Black v. Vaughan, 70 Texas, 147; Holloway v. Cabell, 3 Texas Civ. App., 320.

Indeed, it seems to us that the pledge feature of appellant's claim was an afterthought; that whatever possession he undertook to acquire was under the $24,000 mortgage; and that it cannot be said in this case that there was an "immediate delivery" and "an actual and continued change of possession of the property mortgaged or pledged," as required by our chattel mortgage statute. Revised Statutes, 1895, art. 3328; Baker v. Smelser, 88 Texas, 29.

The evidence also raised the issue of fraud in the alleged pledge, which was submitted to the jury. The charge, however, is complained of, and may not be technically correct. Louisiana Sugar Refining Co. v. Harrison, 29 S. W. Rep., 500. But in view of what is already stated, we are of opinion that no injury resulted to appellant from the alleged defect in the charge.

Several other incidental rulings are complained of, but after carefully examining them all we find nothing reversible therein, so far as appellant is concerned.

Randolph, in addition to the matters above, assigns error to the action of the court in sustaining an exception to so much of his plea as related to the NIK brand of cattle, but the transcript fails to show such ruling. This is a sufficient answer to the assignment. But as the record seems incomplete in this respect, we suggest that, in view of the allegations to the effect that the increase of the other brands had been fraudulently placed in the NIK brand, this demurrer, like the rest, should have been overruled, and the whole issue tried.

Our final conclusion is, that the judgment against Randolph should be reversed, and the cause as between him and appellant Brown remanded for further proceedings; but as to all other parties and issues, that the judgment should be affirmed.

*Reversed and remanded in part.*

HUNTER, Associate Justice, not sitting.