## WARD v. SCARBOROUGH et al.
(No. 9388.)

(Court of Civil Appeals of Texas. Ft. Worth.
May 15, 1920. Rehearing Denied
June 19, 1920.)

1. Courts &illegible;475(1)—Judgment of Court of Civil Appeals not res judicata where it does not appear to have become "final."

Where it does not appear that the judgment of the Court of Civil Appeals has become final —that is, it does not appear that a motion for rehearing has been overruled, and that time has expired for application for writ of error to the Supreme Court, or that appellee has failed to file motion for rehearing—it cannot be said, on motion to dismiss appellee's writ of error in the Supreme Court sued out subsequently to taking of appeal to the Court of Civil Appeals, that the judgment of such latter court is res judicata of the assignments presented in the Supreme Court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Decree or Judgment.]

2. Courts &illegible;475(1)—Court of Civil Appeals first acquiring jurisdiction retains it to exclusion of Supreme Court.

Where it appears that the jurisdiction of the Court of Civil Appeals over an appeal attached prior to the suing out of writ of error in the Supreme Court by appellee who might have presented his contentions in the Court of Civil Appeals, the Court of Civil Appeals has jurisdiction, and the writ of error in the Supreme Court will be dismissed, since, where two courts have concurrent jurisdiction, that which first acquires jurisdiction will retain it.

3. Courts &illegible;473—Where two actions are pending in different courts party must elect in which court he will sue.

When plea of abatement is urged on ground of pendency of another suit in another court, plaintiff is required to elect which suit he will prosecute, and if he fails to do so the court will dismiss the suit in which the plea is filed.

4. Courts &illegible;475(1)—Comity does not depend on possibility of pleading decision in bar.

The rule of comity between courts of concurrent jurisdiction does not depend for application on whether any judgment that may be rendered in the case first instituted could be pleaded in bar in the second suit as a former adjudication, the proper test being whether or not the court in which the first suit is filed has acquired jurisdiction of the same parties and same subject-matter of controversy.

Error from District Court, Eastland County; Joe Burkett, Judge.

Suit by Mrs. W. L. Scarborough and others against E. J. Ward and others. To review judgment for plaintiffs, the named defendant brings error. Writ dismissed.

See, also, 219 S. W. 505; 220 S. W. 274.

Conner & McRae, of Eastland, for plaintiff in error.

F. G. Morris and Geo. E. Wallace, both of El Paso, and J. R. Stubblefield, of Eastland, for defendants in error.

DUNKLIN, J. Mrs. Willie Scarborough, a feme sole, joined by her two sons, Jess and Chunk Scarborough, and her daughter, Moliero Scarborough, instituted this suit against E. J. Ward, Gus Ward, and John Ward in the district court of Eastland county. She alleged in her petition that she owned 2,840 acres of land in Eastland county during the month of May, 1916, which was incumbered by mortgage liens in the form of deeds of trust to secure an indebtedness of approximately $9,500, which she owed one Hillary Moseley; that the defendant John Ward, the father of the other two defendants, was the agent and representative of said Hillary Moseley and in the control of said loans, and was trustee in said deeds of trust; that at that time she was a widow, and for many years had been a customer of a bank which was being run and operated by the defendant Gus Ward; that an installment of interest on said indebtedness was about to fall due, the default in payment of which would entitle the holder to declare the principals of both notes due, and that John Ward, as agent for Moseley, the holder, had agreed to extend the time of payment of said interest for one year, but that for the purpose of liquidating the indebtedness in its entirety plaintiffs offered the land for sale, and thereafter obtained a proposed purchaser for it in T. J. Vines, residing in Greenville, Tex., who agreed to pay the plaintiffs therefor the sum of $6 per acre, and to allow them to reserve from such conveyance all the oil, gas, and mineral rights pertaining to the land; and at the suggestion of defendant Gus Ward plaintiffs borrowed from the bank, which was being operated by him, the sum of $1,500, and put it up as a forfeit in said bank to the credit of the proposed purchaser to insure said sale, and at the same time the purchaser put up the sum of $7,500 in cash as a forfeit to plaintiffs to bind him to carry out his contract of purchase. Plaintiff Mrs. Willie Scarborough was the owner of the legal title to the land, but the same was purchased after her husband's death with community funds. Her husband had devised his half of the community estate to her for life, but with power to sell it whenever she should see fit so to do.

The proposed purchaser was able, ready, and willing to carry out and consummate his agreement to purchase the land, and would have done so but for the conspiracy between the three defendants, formed for the purpose of acquiring title to the property for E. J. Ward for $4.50 per acre, and by means of which conspiracy said purpose was accomplished in the following manner: With full

knowledge of the proposed purchaser's contract to buy the land, and of his ability and willingness to consummate the trade at the price stated, the defendant Gus Ward, in pursuance of said conspiracy and acting in behalf of the other two defendants as well as for himself, while acting as the agent of plaintiffs and in violation of the trust imposed in him by them, withdrew their forfeit of $1,500, and notified Vines of such withdrawal, and thereafter induced Vines also to withdraw his forfeit of $7,500, and to refuse to consummate the purchase by falsely and fraudulently representing to him that the land was not really worth as much as $3 per acre; all for the purpose of enabling E. J. Ward thereafter to acquire said land for a price below its market value.

According to further allegations in the petition, the land, without the mineral rights, was well worth the sum of $6 per acre, and as soon as the defendants succeeded in preventing plaintiffs from making said proposed sale John Ward, as agent for Moseley, declared all of the indebtedness owing by the plaintiff to him due in violation of the agreement of extension mentioned above, and notified the plaintiff that unless the same was paid at once the lien given to secure it would be foreclosed and the land would be sold to satisfy the indebtedness. Such action was for the purpose of taking advantage of plaintiffs' financial distress, they being unable to raise money from any other source, and to acquire plaintiffs' land for a grossly inadequate price. On account of the helpless condition in which plaintiffs had thus been placed by the fraudulent acts of the defendants in causing the proposed purchaser to refuse to carry out his contract of purchase, plaintiffs were forced to sell the land to defendant E. J. Ward for the price of $4.50 per acre, with no mineral reservation except a one-half of the royalties that might thereafter arise from an oil lease theretofore given by plaintiffs on said land, and later to sell the remaining half of said royalties to E. J. Ward for the sum of $500, by reason of his false and fraudulent representations that said lease was void and his threat to prevent any drilling thereunder. At the time of said sale the land was worth $6 per acre aside from the mineral rights therein, and the mineral rights in the land were worth $100,000.

According to further allegations in the petition, plaintiffs did not know of such fraudulent acts and conduct on the part of defendants at the time they executed the deed to E. J. Ward and the further deed to their remaining interest in the expected royalties. Plaintiffs further alleged, in substance, that by reason of the premises the defendant E. J. Ward held title to said land in trust for them, and they prayed for judgment against E. J. Ward, canceling the deed of conveyance, and fixing a lien against said land in Ward's favor for the amount of money he had paid to plaintiffs therefor, together with interest thereon. In the alternative, and in the event plaintiffs should be held not entitled to a decree canceling the conveyance, they prayed for damages against the defendants in the sum of $104,260, which they sustained by reason of their failure to sell the property to Vines, such damages being the sum of $4,260, which they would have received from Vines for title to the land without the mineral rights plus $100,000, the value of the mineral rights which they would have retained in the deed of conveyance to Vines.

By proper pleadings the truth of all of those allegations was put in issue by the defendants. Defendants' answer also contained numerous exceptions to the sufficiency of the petition to recover the land or the damages claimed in the alternative prayer, and by special exceptions the statute of limitation of two years was invoked. By way of special answer to the merits, defendants pleaded the statutes of two years' limitations, waiver, stale demand, the statute of frauds, failure of consideration for the alleged agreement of extension of the debts owing by plaintiffs to Hillary Moseley, and special denials of the alleged collusion and fraud charged by plaintiffs.

Upon the trial the plaintiffs dismissed their alternative prayer for damages as against defendant Gus Ward and John Ward.

The following were special issues submitted to the jury, with their findings thereon:

"(1) Did J. W. Ward agree with the plaintiff Mrs. Willie Scarborough that he would extend, or cause to be extended, the loan upon said land, together with the interest due thereon, for a term of one year from the spring of 1916? Answer: Yes.

"(2) If you answer question No. 1 in the affirmative, then answer, Did the plaintiff Mrs. Willie L. Scarborough rely upon such representations and thereby fail to make arrangements to take up the loan and interest when it became due? Answer: Yes.

"(3) Did J. W. Ward thereafter, on or about April, 1916, inform the plaintiffs Jess and Chunk Scarborough that he would wait no longer for payment of the accrued interest on said loan, but would foreclose the same, if the same were not paid immediately? Answer: Yes.

"(4) If you answer the above question in the affirmative, then answer, Did E. J. Ward have knowledge of such action on the part of J. W. Ward and thereby induce plaintiffs to accept the sum of $5.00 per acre for said land? Answer: Yes.

"(5) Was the sum of money paid by E. J. Ward to plaintiffs for said land a fair, reasonable market value for said land at that time? Answer: No.

"(6) Did the defendant Gus Ward represent to one Vines, or his agent, S. A. Moore, that the land in controversy was not worth $3.00 per acre? Answer: Yes.

"(7) If you answer the above question in the affirmative, was such representations on the part of Gus Ward his true opinion as to the reasonable market value of said land at the

time, or was it made for the purpose of misleading said Vines, and to cause him to refuse to carry out his agreement to purchase said land from the Scarboroughs? Answer: No, it was made to mislead Vines.

"(8) What was the reasonable market value of said land per acre in April, 1916, including all mineral rights, except one-half of the royalty, under the lease then in force? Answer: Eight dollars per acre.

"(9) If you have answered question No. 7, that Gus Ward made representations to said Vines or his agent that said land was not forth $3.00 per acre, was such representations, if any, made for the purpose of preventing said Vines from consummating the deal for said land with the opportunity to buy same? Answer: Yes.

"(10) Did E. J. Ward have knowledge of such representations, if any, on the part of Gus Ward, to Vines or his agent, with reference to said land? Answer: Yes.

"Special issue No. 9 (requested by plaintiffs): Did the failure of the sale to Vines cause Mrs. Scarborough and sons to sell to E. J. Ward for $5.00 per acre without mineral reservation, except one-half of the royalty that might accrue on the existing lease, in order to meet the indebtedness due Moseley, for whom J. W. Ward was acting? Answer by plaintiff: Yes.

"Special issue No. 11 (requested by plaintiffs): Did E. J. Ward have knowledge of the conduct of Gus Ward or have knowledge of such facts as should have put a person of ordinary prudence on inquiry as to the existence of such facts, and could have learned the same by the exercise of such diligence as a person of ordinary prudence would exercise under the same or similar circumstances to acquaint himself with the facts? Answer by the plaintiff: Yes."

Upon that verdict the court entered judgment decreeing that E. J. Ward holds legal title to the land sued for in trust for the plaintiffs and that plaintiffs recover of said Ward the title and possession of the land, subject to a reservation in E. J. Ward of title to one-half of the one-eighth royalty in all the oil to be taken out of the land under a lease which had been executed by plaintiff Mrs. Willie Scarborough to Herbert Lane for a one-eighth royalty of the oil, and which said royalty had been conveyed by plaintiff to E. J. Ward after she had executed the deed to Ward to her remaining interest in the land; and subject to the further condition that plaintiff Mrs. Scarborough pay to said E. J. Ward the sum of $4,117, which he had paid to her for the land on April 25, 1916, and the further condition that plaintiff pay to E. J. Ward an indebtedness of $10,033, which E. J. Ward had assumed when he purchased the land from the plaintiff, said indebtedness being the amount which plaintiff owed to Hillary Moseley, and which indebtedness E. J. Ward had paid off since he had purchased the land from the plaintiff. It was further decreed that no writ of possession shall issue in plaintiff's favor until said sums of money shall be refunded to E. J. Ward by Mrs. Scarborough, which payment shall be made within 90 days from the date the judgment shall become final upon the termination of all proceedings which the defendant may take to have the same set aside, and that upon the failure of said plaintiff to refund said money within said date the judgment in her favor shall cease to be of any further force or effect, but upon such payment a writ of possession shall issue in her favor for said land. But it was further decreed that the defendant E. J. Ward should have the right to satisfy the judgment in plaintiff's favor in full by payment to her of the sum of $8,520, being the difference between $5 per acre, the amount which E. J. Ward paid for the land, and its value on April 25, 1916, which the jury found to be $8 per acre, with interest thereon at the rate of 6 per cent per annum from April 25, 1916, until the date of payment, which payment shall be made within 90 days from the date the judgment shall become final after appeal, if any, shall have terminated. Plaintiff gave notice of appeal from said judgment at the time the judgment was rendered, the date of the judgment being April 21, 1919. On May 17, 1919, the defendant E. J. Ward's motion for new trial was overruled, whereupon he gave notice of appeal to this court, and that order contained the following:

"It is ordered and decreed by the court that all parties hereto be, and they are hereby, allowed ninety days from and after the adjournment of this term of court in which to prepare, present, have approved, and filed a statement of facts and bills of exception in this case."

The term of court adjourned May 17, 1919, which was the same day the motion for new trial was overruled. On August 14, 1919, the defendants filed an application for an extension of time within which to file statement of facts and bills of exception, and on the same day, to wit, August 14, 1919, that request was granted by the trial judge, who extended the time 30 days from and after August 15, 1919, in which to prepare and file such statements of facts and bills of exception, it being stated in that order of extension that September 14, 1919, would be the last day of the extension.

On November 7, 1919, defendant E. J. Ward filed a petition for writ of error to this court, and on November 17, 1919, he filed his assignments of error in the trial court. On January 29, 1920, he filed in this court a transcript of the proceedings in the trial court, and also a statement of facts which had been duly approved by the trial judge in a certificate thereto stating that the parties thereto had been unable to agree upon a statement of facts, and that the statement of facts approved by him was the one

prepared by him after examination of the statement of facts submitted by both parties.

The case thus brought to this court by writ of error is docketed here as "E. J. Ward, Plaintiff in Error, v. Mrs. Willie L. Scarborough et al., Defendants in Error," and numbered on the docket of this court 9388.

Plaintiffs in the trial court perfected their appeal from the judgment there rendered, and filed the transcript of the record in this court here on July 18, 1919, but filed no statement of facts with the record, and the cause on that appeal was docketed here as "Mrs. Willie Scarborough et al., Appellants, v. E. J. Ward et al., Appellees," and numbered 9260. On December 12, 1919, by order of the Supreme Court, that case was transferred to the Court of Civil Appeals of the Eighth Supreme Judicial District sitting at El Paso. It thus appears that said transfer was made more than one month prior to the filing in this court of the writ of error proceedings in cause No. 9388, which is now pending.

On March 11, 1920, the case bearing the number 9260, and which had been transferred to the El Paso court (220 S. W. 274) was heard and determined by that court, and a judgment was there rendered so reforming the judgment of the trial court as to eliminate therefrom that portion which permitted the defendant E. J. Ward to retain title to the land by paying the amount fixed by the trial court for that privilege, and as so reformed the judgment of the trial court was in all other respects affirmed.

E. J. Ward, as appellee in the case in the El Paso court, filed a brief in that court in reply to the brief filed by the appellants in that case. The briefs so filed by said Ward contained eight cross-assignments, in all of which complaint was made of the insufficiency of the petition of plaintiffs, Mrs. Scarborough et al., to warrant the relief prayed for therein. Those cross-assignments were overruled by the court, and the assignment presented by appellants in that case, who were plaintiffs in the trial court, to that part of the judgment which gave defendant E. J. Ward the right to retain the land upon payment of the sum of money stated, was sustained. That assignment and the cross-assignments mentioned were the only assignments discussed and determined. Since the record in that case contained no statement of facts, appellee was not in any proper position to attack the findings of the jury for insufficiency of evidence to support them, and no such assignments were presented. It thus appears that the effect of that decision was that the petition of the plaintiffs was a sufficient basis for their claim that defendant E. J. Ward held title to the property in trust for Mrs. Willie Scarborough, and that the findings of the jury warranted

the granting of that relief by the judgment of the trial court, and that by reason of the fact that Ward so held title to the property he had no right to acquire it for his own benefit by paying therefor the consideration mentioned, against the consent of Mrs. Scarborough.

On July 18, 1919, and at the same time plaintiffs in the trial court filed the transcript in this court on their appeal in case No. 9260, later transferred to the El Paso court, the following agreement, signed by counsel for all parties, was filed in this court along with the transcript just mentioned:

"In the Court of Civil Appeals, Second Supreme Judicial District of Texas.

"Mrs. Willie L. Scarborough et al., Appellants, v. E. J. Ward et al., Appellees.

"E. J. Ward, Appellant, v. Willie L. Scarborough et al., Appellees.

"There being two appeals in the above-styled cause, it is agreed by the parties thereto that both appeals be filed under one number and be considered together; that each appeal shall be briefed separately, whether prosecuted by cross-assignment of error or as an independent appeal, the appellant therein briefing his appeal as appellant, and each party as appellee to the others' appeal, filing brief as appellee to the appeal to the other, so that neither party in briefing as appellant may be required to anticipate and answer, before it is filed, the brief of the other as appellant, but may confine his brief as appellant to the questions brought up by him as appellant.

"It is agreed that filing of briefs in the trial court is waived as to each and all briefs, but that each party briefing as appellant shall furnish the opposing party a copy of his brief at least thirty days before the case is to be submitted, and each party briefing as appellee shall furnish the opposing party a copy of his brief as appellee five days before the day for submission."

That agreement was later transmitted to the Court of Civil Appeals at El Paso with the record in that case.

In the suit now pending in this court, which is No. 9388, and being the appeal by writ of error prosecuted by E. J. Ward, and which has not yet been determined by this court, the defendants in error, plaintiffs in the trial court, and appellants in the case decided by the El Paso court, have filed a motion to dismiss this writ of error because of the fact that the court of appeals at El Paso has exclusive jurisdiction of the entire controversy by reason of the pendency of the appeal case in that court, which jurisdiction attached prior to the filing of the writ of error in this court in the present suit. And, in connection with that motion, the defendants in error here have filed a certified copy of the opinion rendered by the El Paso court disposing of the appeal case, which is noted above.

The briefs filed by plaintiff in error in this suit contain eight assignments of error, which are the same as the eight cross-assignments of error filed in the appeal case in the El Paso court and overruled by that court; all of those assignments being addressed to the action of the court in over-ruling exceptions to the plaintiffs' petition on the ground that said petition was insufficient to warrant the relief prayed for. By other assignments filed in this suit the judgment of the trial court is assailed on the ground of the insufficiency of the evidence to warrant the ingrafting of any trust upon the land deeded to E. J. Ward by Mrs. Scarborough; that the evidence adduced established a contract which was in contravention of the statutes of fraud and therefore void. Several other assignments are addressed to the action of the court in overruling objections of the plaintiff in error to testimony introduced by the plaintiffs in the trial court. Still another assignment is presented in which complaint is made of the judgment of the trial court in allowing Mrs. Scarborough a recovery for the amount equal to the difference between the amount paid to her by E. J. Ward and the market value of the land on the ground that her suit for such a judgment was barred by the statute of limitation.

By article 2084 of our Revised Statutes, the right is given to any party to a suit to appeal from a final judgment in the case either by giving notice of appeal in open court in two days after the judgment or after the order overruling his motion for new trial, and by filing with the clerk an appeal bond, for a bond is required by law, or an affidavit in lieu thereof, within 20 days after the expiration of the term, provided that, in the event the court may continue more than eight weeks, then the bond or affidavit in lieu thereof must be filed within 20 days after notice of appeal is given if the party appealing resides in the county, and within 30 days, if he resides out of the county. By article 2086 any party to the suit may sue out a writ of error within six months after final judgment is rendered. By article 2089 the plaintiff in error, in order to perfect his writ of error, is required to file a writ of error bond, or an affidavit in lieu thereof, at the time he files his petition for writ of error, such writ of error bond or affidavit in lieu thereof being the same as required in an ordinary appeal.

"Art. 2108. When an appeal or writ of error has been perfected, the clerk of the court shall, upon the application of either party, make out, and deliver to him, a transcript of the record of the cause.

"Art. 2109. The transcript shall, except in the cases hereinafter provided, contain a full and correct copy of all the proceedings had in the cause."

"Art. 2068. After the trial of any cause, either party may make out a written statement of the facts given in evidence on the trial, and submit the same to the opposite party, or his attorney, for inspection. If the parties, or their attorneys, agree upon such statement of facts, they shall sign the same; and it shall then be submitted to the judge, who shall, if he find it correct approve and sign it; and the same shall be filed with the clerk. Where it is agreed by the parties to the suit, or their attorneys of record, that the evidence adduced upon the trial of the cause is sufficient to establish a fact or facts alleged by either party, the testimony of the witnesses and the deeds, wills, records, or other written instruments, admitted as evidence relating thereto, shall not be stated or copied in detail into a statement of facts; but the facts thus established shall be stated as facts proved in the case; provided, an instrument, such as a note or other contract, mortgage or deed of trust, that constitutes the cause of action on which the petition, or answer, or cross-bill, or intervention, is founded may be copied once in the statement of facts. When there is any reasonable doubt of the sufficiency of the evidence to constitute proof of any one fact under the preceding rule, there may then be inserted such of the testimony of the witnesses and written instruments, or parts thereof, as relate to such facts."

Rules 3, 4, 5, and 42 for the Court of Civil Appeals (142 S. W. x, xiv) reads as follows:

"(3) Either party may file the transcript for which he has applied to the district clerk, and which has been delivered to him; both of which facts must appear on the transcript by the indorsement of the district clerk. If the indorsement shows that it was applied for by one party and delivered to the other, it must be shown by the indorsement of the clerk, or otherwise, to entitle it to be properly filed as the transcript of the party to whom it was delivered and that it was delivered to one by the consent of the other, as each party has the sole right to the transcript which he applied for to be made out for him; and if it is so filed without that fact being shown, the court may strike the case from the docket as improperly filed, upon its own inspection, or upon motion of the party to whom the transcript belonged.

"(4) If both parties file transcripts within the proper time—which they may do—and that of the appellant or plaintiff in error is properly made and indorsed, it shall be regarded by the court as the transcript of the record in the case, and the court will grant the appellee or defendant in error leave to withdraw that filed by him for his own use.

"(5) If but one party file his transcript in proper time, that shall be regarded as the transcript of the record in the case."

"(42) When appellant or plaintiff in error has failed to prepare the cause for submission, by the omission of what is required after bond or affidavit filed for appeal and for writ of error with citation served, the appellee or defendant in error, before the call of the case, may file in the appellate court a brief in the manner required of the appellant or plaintiff in error except that his propositions will be shaped so as to show the correctness of the

judgment, which the court may, in its discretion, regard as a 'correct presentation of the case, without examining the record further than to see that the judgment is one that can be affirmed upon the view of the case as presented by appellee or defendant in error. The appellee or defendant in error shall be entitled to the custody of the transcript after it is filed in the appellate court, for the purpose of preparing his brief."

It thus appears that plaintiff in error in this suit could have procured the filing of a statement of facts in the appeal case that went to El Paso if he had desired so to do. And he could have filed a supplemental transcript showing bills of exception to the admission of testimony and any other proceedings that had been omitted from the transcript that had been filed by the appellants in that case. Cassin v. Zavalla County, 71 Tex. 203, 9 S. W. 105. And if he had procured the filing of a statement of facts in the trial court in the appeal of the case which was transferred to the El Paso court, and by supplemental transcript had shown bills of exception to the admission of testimony complained of in his assignments in this court, he could then have presented all the assignments of error that are presented in the present suit, which he did not present in that suit; all of such assignments being presented as cross-assignments of error.

[1] While it appears that the El Paso court has already disposed of the appeal case, it does not appear whether or not that judgment has become final; in other words, it does not appear that a motion for rehearing has been overruled, and that the time has expired for an application for a writ of error to the Supreme Court, or that the appellee on that appeal has failed to file a motion for rehearing, and therefore it cannot be said that that judgment is res adjudicata of the assignments presented in this suit, which were not presented by the appellee in that appeal. However, it does appear, as noted above, that the jurisdiction of that court over the controversy between the parties attached prior to the filing of the present record in this court.

[2] It is a familiar rule that, where two courts have concurrent jurisdiction of the same controversy, the court which first acquires jurisdiction will retain it to the exclusion of the other. As is said in 7 R. C. L. p. 1067:

"The principle is essential to the proper and orderly administration of the laws; and, while its observance might be required on the grounds of judicial comity and courtesy, it does not rest upon such considerations exclusively, but is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process. If interference may come from one side it may from the other also, and what is begun may be reciprocated indefinitely. An essential condition of the application of the rule as to priority of jurisdiction is that the first suit shall afford the plaintiff in the second an adequate and complete opportunity for the adjudication of his rights, for the rule that the court first acquiring jurisdiction retains it to the end must yield to the higher principle, which accords to every citizen the right to have a hearing before a court of competent authority."

In a note in Ann. Cas. 1912A, 150, there is a collation of decisions giving effect to the general rule stated, including the case of Harrison v. Littlefield, 57 Tex. Civ. App. 617, 124 S. W. 212, by this court. See, also, 15 Corpus Juris, p. 1161. In 3 Corpus Juris, p. 331, the following is said:

"As a general rule a second proceeding to obtain a review by an appellate court cannot be taken while a prior valid proceeding for such purpose is still pending, and if it is attempted the second proceeding will be dismissed."

In Cameron v. Cates, 22 Tex. Civ. App. 577, 55 S. W. 980, this court dismissed a writ of error that had been filed in this court after an appeal had been perfected in the same case, and in disposing of the case the following was said by Chief Justice Conner:

"We think it unquestionably true that the questions herein presented might have been as effectively presented by plaintiffs in error by cross-assignments of error in cause No. 3346, Duren v. Ry. Co., 86 Tex. 287, 24 S. W. 258; Brown v. Hudson (Tex. Civ. App.) 38 S. W. 653. Not having done so, we do not think they can be now heard on writ of error, under the circumstances with which we are now confronted. If such practice be indulged, the anomaly of diverse holdings as to the same judgment might arise, a condition evidently not contemplated in conferring the right to writ of error."

To the same effect are the following: Miller & Vidor, Lumber Co. v. Williamson, 164 S. W. 440 (writ of error refused); Goggan & Bros. v. Morrison, 163 S. W. 119; Sparks v. Natl. Bank of Commerce, 168 S. W. 48; Cattlemen's Trust Co. v. Blasingame, 184 S. W. 574; Street v. Case Threshing Machine Co., 188 S. W. 725; Harris v. Simmang, 29 S. W. 668; So. Kan. Ry. Co. v. Loffoon, 33 S. W. 584.

[3] And when a plea of abatement is urged on the ground of pendency of another suit in another court plaintiff is required to elect which suit he will prosecute, and if he fails to do so the court will dismiss the suit in which the plea is filed. Payne v. Berham, 16 Tex. 367; Trawick v. Martin Brown Co., 74 Tex. 522, 12 S. W. 216; Pullman Co. v. Hoyle, 52 Tex. Civ. App. 534, 115 S. W. 315; Wilkerson v. Ft. W. & D. C. Ry. Co., 171 S. W. 1041.

In Williams v. Wiley, 96 Tex. 148, 71 S.

W. 12, Wandelohr v. Rainey, 100 Tex. 471, 100 S. W. 1155, and Wandelohr v. Grayson County Natl. Bank, 102 Tex. 20, 108 S. W. 1154, 112 S. W. 1046, it was held, in effect, that a writ of error can be prosecuted after disposition of an appeal in the same case by other parties to the judgment if in the former appeal the correctness of that portion of the judgment complained of in the writ of error proceedings was not involved, or if the plaintiff in error was not made a party to the first appeal. Evidently the theory of those decisions is that in the one instance the appellate court on the first appeal acquired no jurisdiction over that portion of the judgment complained of in the second appeal, and in the other instance no jurisdiction over the person of the complainant in the second appeal. But those decisions have no application to this case.

Plaintiff in error in the present suit was party to the other appeal, and, as appellee, filed briefs in that case in the El Paso court; and the jurisdiction of that court was invoked by appellant to reverse that portion of the judgment of the trial court which permitted the appellee to retain title to the land by paying to appellant the amount of money stated; and appellee invoked the jurisdiction of the court to reverse that portion of the judgment decreeing that appellee held title to the land in trust for appellant Mrs. Scarborough, and allowing her a recovery of it on that theory. Plaintiff in error now asks this court for the same relief for the same reasons urged in that court, and for other and additional reasons urged in the assignments of error filed herein, which were not filed in the other appeal, but which he could have urged in the El Paso court by taking proper steps as a predicate therefor, which he had the right to take, as noted above. Should this court sustain any of those contentions its decision might be in conflict with that of the El Paso court.

[4] Some authorities announce that the rule of comity between courts of concurrent jurisdiction has no application unless it can be said that any judgment that may be rendered in the case first instituted could, in the second suit, be pleaded in bar as a former adjudication. 7 R. C. L. p. 1069. But we are of the opinion that such is not necessarily the true test. The authorities are not in harmony in their views of the extent of the rule of res adjudicata; some holding broadly that a former judgment between the same parties with respect to the same cause of action is a bar to a further litigation of every issue that was presented or could have been presented in the former suit, while other courts take a more restricted view, and hold that the former judgment precludes further litigation of only those issues that were specifically raised in the former suit or were necessarily involved in others. See Moore v. Snowball, 98 Tex. 16, 81 S. W. 5, 66 L. R. A. 745, 107 Am. St. Rep. 596, for an extended review of the authorities in the opinions of the majority and minority of the judges of our Supreme Court. But, as announced in some of the authorities cited, a party has the right to avoid the expense and annoyance of a multiplicity of suits, and to that end to invoke the rule of comity between courts, and thereby require a litigation of all issues that may be presented in the first suit; and we believe that the proper test is whether or not the court in which the first suit is filed has acquired jurisdiction of the same parties and of the same subject-matter of controversy. Indeed, as long as the first suit is pending in the trial court the pleadings may be amended, and in advance of a final judgment therein it is impossible to forecast the particular issues that will be pleaded or determined.

For the reasons stated, the motion of defendants in error to dismiss this writ of error is sustained, and the writ of error is dismissed.