J. M. WEST AND R. C. DUFF v. WILLIAM CARLISLE.

No. 3161.  Decided May 24, 1922.

(241 S. W., 471.)

1.—Contract—Sale of Railroad.

The owner of the stock and first mortgage bonds of a railway contracted to sell them, agreeing to deliver the road to the purchasers on payment of the price agreed free from all debts except the first mortgage bonds, "which is to say that the current bills and accounts receivable shall suffice to discharge the bills and accounts payable, and in the event of the failure so to do the difference shall be made good by the owner, and if there is any excess of cash resulting therefrom then such excess is to be retained by the owner." Held that, regardless of the meaning of the phrases "bills receivable" and "accounts receivable," the contract entitled the seller to apply any cash belonging to the company to the payment of its debts and to have any excess of the proceeds of current obligations owned by the company and readily convertible into cash on the date of the final transfer, including cash on deposit in banks and in the hands of the company's agents, over and above the company's indebtedness other than that on its first mortgage bonds. (Pp. 532, 533).

111 Tex.—34

**2.—Practice in Supreme Court—Assignment of Error.**

A defendant in error is not entitled to have considered by the Supreme Court an adverse ruling upon errors assigned by him in the Court of Civil Appeals save on petition for writ of error therein duly presented by him in the Supreme Court. Holland v. Nimitz, ante p. 419, is distinguished as limited to assignments presented to and sustained by the Court of Civil Appeals and which should be considered in determining whether the judgment of that court was correct. (Pp. 533, 534).

Error to the Court of Civil Appeals for the First District, in an appeal from Harris County.

West and Duff sued Carlisle, and defendant obtained judgment against them upon cross-action. This was modified and affirmed on appeal by plaintiffs (199 S. W., 515) who thereupon obtained writ of error.

*Baker, Botts, Parker & Garwood,* for plaintiff in error.—The terms "bills receivable" and "accounts receivable" do not in their ordinary acceptation include cash in bank. Such is not the general meaning accredited these words in everyday life. The plaintiffs aver by appropriate allegations that the parties to the contract in using these terms in Article IV did not intend to embrace cash in bank or in transit. In the face of these allegations the trial court could not say as a matter of law that they did. At most it became a question of fact and it was error to sustain exceptions to the plaintiffs' pleading making these averments. McCamant v. Batsell, 59 Texas, 367; Railway Co. v. Daniels, 62 Texas, 74; Ballard v. McMillan, 5 Texas Civ. App., 680; Gale v. Drake, 51 N. H., 78; Wyatt v. Norris, 66 S. E., 1016; Bluegrass Co. v. Railway Co., 119 S. W., 769; Koss v. Kastelberg, 36 S. E., 377.

Carlisle has not applied for writ of error and is not in a position to complain of the judgment that was rendered in the Court of Civil Appeals. The case is therefore before this court solely upon the assignments which we present challenging the judgment of the Court of Appeals.

Under the allegations in the petition, it became a question of fact whether West and Duff were entitled to a credit because of the interest coupons upon the First Mortgage, which coupons were accrued and unpaid when the property was turned over, on September 30th, 1912. Dwyer v. City of Brenham, 70 Texas, 30; Parks v. O'Connor, 70 Texas 377; Campbell v. Howerton, 87 S. W., 370; Rastetter v. Reynolds, 66 N. E., 613; Lowe v. Lehman, 15 Ohio St. 179; Brunold v. Glasser, 53 N. Y. Supp., 1021; Evans v. Western Brass Mfg. Co., 24 S. W., 175, 118 Mo., 548, Snoqualmi Realty Company v. Moynihan, 78 S. W., 1014, 129 Mo., 629; Miller v. Stevens, 100 Mass., 518; Polhemus v. Fitchburg Ry. Co., 123 N. Y., 502; Elliott on Contracts, Secs. 1508, 1517, 1531, and 1663.

*E. A. Haid and Wilson, Dabney & King,* for defendant in error.— It is not admitted that the terms "bills receivable" and accounts "receivable" do not in their ordinary acceptation include bank credits. On the contrary, we contend that they do in their ordinary acceptation include these credits, and credits for collected money in the hands of agents, but by the plain expression and intent of the contract, Carlisle was to be credited with bank credits, and credits in the hands of railroad agents, all being the proceeds of bills and accounts receivable.

The contract and the intent is plain that the bank credits were to be credited to Carlisle, because he could have applied them to the payment of bills and accounts receivable before the turnover, as is admitted. They are attempted to be forfeited, because he entrusted their application to the appellants.

Again, if Carlisle had not collected, for the railroad, the bills and accounts payable, the proceeds of which were deposited in the bank, but had turned them over to appellants to collect, then they admit that they would have been obliged to credit Carlisle therefor, but contend that because he relieved them of this collection they can charge him therefor. When words have been widely and generally accepted to have certain meanings, technical or not technical, no evidence can be received to show what some accountant in New York, or Washington, considers them to mean, or what they mean in the private mental processes of the appellants. Armstrong v. Granite Company, 49 Am. St. Rep., 684, and note thereto, and 147 N. Y., 495; Abraham v. Railway Co., 82 Am. St. Rep., 780; Vogt v. Schienebeck, 122 Wis. 491, 106 Am. St., 989; Galena Ins. Co. v. Cupfer, 28 Ill., 332; Franklin v. Mooney, 2 Texas, 452; Self v. King, 28 Texas, 552; Riggins v. Post; 172 S. W., 210; Soell v. Hadden, 85 Texas, 187; Reagan v. Bruff, 108 S. W., 185; Wright v. Mortgage Co., 42 S. W., 789; Jones on Ev., Sec. 466. The whole case is now before the Court and we not only resist the position of the plaintiffs in error in regard to cash in bank, but also present by cross-assignment that the trial court erred in taxing Carlisle, in the accounting, with that tax *pro rata* accrued up to the time of the turnover, as presented by us by cross-assignment on appeal of the plaintiffs in error, set out in our brief, and also that the Court of Civil Appeals erred in reducing our judgment by taxing us with a *pro rata* of taxes for the remainder of the year 1912 from the date of the "cut-off," and by also reducing our judgment by taxing us with amounts paid by West and Duff in settlement of suits and other unsettled claims against the B. & G. N. Ry.; which is allowed to West and Duff by the Court of Civil Appeals.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

For the determination of the single question properly presented for decision by this court in this case, we adopt the statement of plaintiffs error, viz.

"William Carlisle was the owner of the stock of the Beaumont & Great Northern Railroad Company. He also owned all of the first mortgage bonds issued by said Railroad Company. He made a contract on the 20th day of May, 1912, to sell these stocks and bonds to West and Duff. There were details to be carried out which delayed the consummation of the sale until the 30th day of the following September. The contract contained the following clause:

" 'Owner contracts and agrees that, effective as of date on which the railroad securities are to be paid for and delivered to the purchasers, or their assigns, the railroad shall be delivered to them clear of debt or any incumbrance, except the first mortgage above referred to, which is to say, that the current bills and accounts receivable shall suffice to discharge the bills and accounts payable, and in the event of the failure so to do, the difference shall be made good by the owner, and if there is any excess of cash resulting therefrom, then such excess is to be retained by the owner.'

"When a final settlement came to be had, and the bills and accounts receivable were balanced against the bills and accounts payable, Carlisle claimed a credit for $7,868.29, which the Railroad Company had on deposit in a certain bank, and $598.52, cash in the hands of agents in transit at the time the property was turned over.

"West and Duff declined to allow him this credit, and claimed there was a deficit in the bills receivable; they filed a suit for the deficit, Carlisle filed a cross-action claiming a credit for this cash. The trial court sustained his cross-action, giving him credit for the cash and rendering a judgment in his favor for a balance."

The Court of Civil Appeals entered a judgment which gave Carlisle credit for the cash on hand, though diminishing the trial court's judgment in favor of Carlisle by the amount of certain taxes and monies paid out in settlement of claims against the Railroad Company.

Plaintiffs in error complain that the judgment of the trial court and of the Court of Civil Appeals are erroneous because the words "bills receivable" and "accounts receivable" do not include cash on deposit in a bank nor cash in the hands of agents in transit.

Regardless of the meaning of the phrases "bills receivable" and "accounts receivable," when standing alone, we are convinced that the entire paragraph of the contract in which these phrases occur entitled Carlisle to receive from West and Duff the excess of the proceeds of the current obligations owned by the Railroad Company, and customarily and readily convertible into cash, on September 30, 1912, including cash on deposit in bank and cash in the hands of its agents, over and above the company's indebtedness, except first mortgage bonds. According to the contract, there was to be no delivery of the railroad or change in its continued operation, under the control of Carlisle as owner of the company's capital stock, until the

stock and bonds were paid for. It is patent, therefore, that Carlisle had the lawful right to have the railroad company apply its bank deposit or agents' balances in discharge of its debts other than its first mortgage bonds at any time prior to September 30th. It is inconceivable that West and Duff would have signed a contract authorizing such application of the cash assets of the company, unless it was intended that Carlisle should have the benefit thereof in the adjustment provided for in paragraph four.

In our opinion, the parties were careful to provide simply that the corporation, whose stock was to pass to West and Duff, was to be out of debt, except for its first mortgage bonds, when the change in stock ownership should take place, Carlisle supplying any money required to meet the indebtedness to be discharged in so far as same could not be met with the company's cash receipts and resources, derivable from ordinary operation, and West and Duff returning any excess in the current receipts and resources over the debts to be discharged. Had it been intended for the ordinary cash receipts and resources of the company to go to building up a surplus, to inure to the benefit of the new stockholders, instead of being applied to meet the company's liabilities other than its first mortgage bonds, we feel certain that different and quite explicit language would have been used.

The terms of the written contract were not ambiguous. The meaning of the certain terms of the contract could not be changed by pleading or parol proof of an intent of the parties variant from such terms.

Defendant in error Carlisle seeks a review of the judgment of the Court of Civil Appeals in so far as that court reduced the trial court's judgment in his favor, and in so far as that court overruled his cross-assignment seeking to increase the amount of his recovery. It has been more than once decided that a defendant in error in the Supreme Court who unsuccessfully sought change in a judgment in the Court of Civil Appeals through cross-assignments of error as an appellee there, cannot have his cross-assignments considered in the Supreme Court, unless he presents them by proper assignments in his own petition to the Supreme Court for writ of error.

Thus, it was said by the court, through Associate Justice Williams, in The Texas Company v. Stephens, 100 Texas, 638, 103 S. W., 483: "The plaintiff alone has applied for a writ of error, and we are not advised by anything said or done in this court by counsel for defendants whether or not they expect action at our hands upon their cross-assignments presented in the Court of Civil Appeals. We deem it proper to say that, as causes must be brought to this court upon petition for writ of error specifying the grounds upon which the writ is sought, and as our consideration must be confined to the grounds so specified, assignments made in the Court of Civil Appeals, but

not embraced in some form in a petition for writ of error, lay no basis for a review by this court of the judgment of the Court of Civil Appeals. . . . The case is therefore before us only upon plaintiff's petition and is so presented as to confine us to the points made therein in reviewing the action of the Court of Civil Appeals."

Again, in Cain v. Bonner, 108 Texas, 408, 3 A. L. R., 874, 194 S. W., 1099, the court decided: "Certain rulings by the trial court adverse to the defendants were made by them the subject of cross-assignments of error in the Court of Civil Appeals. We think they were entitled to have them there considered, though they did not prosecute an appeal. Buren v. Houston & T. C. Ry. Co., 86 Texas, 287, 24 S. W., 258; Carroll v. Carroll, 20 Texas, 732; Brown v. Hudson, 14 Texas Civ. App., 605, 38 S. W., 653. But a writ of error was not applied for on account of the Court of Civil Appeals' disposition of these rulings; and we are therefore not called upon to determine the questions which they involve."

It would seem manifest that a defendant in error cannot occupy a more advantageous position here with respect to rulings against him, by the Court of Civil Appeals, not complained of by petition for writ of error, on his adversary's assignments, than with regard to such rulings on his own proper cross-assignments.

The Court recently determined, on rehearing, in the case of Holland v. Nimitz, 239 S. W., 185, (ante, p. 419) ; first, that where the order granting the writ of error does not provide otherwise, the appellate jurisdiction of the Supreme Court, under the statutes now in force, extends to all the properly presented questions of law in the case; and, second, that the party who prevailed in the Court of Civil Appeals is entitled to have his assignments in that court considered by the Supreme Court in so far as is necessary to determine what judgment should have been rendered by the Court of Civil Appeals. No questions are properly presented for the Supreme Court's decision by a plaintiff in error which do not appear in his application for writ of error. It is essential to the right of a defendant in error to have the Supreme Court consider questions not raised by the petition for writ of error that the judgment of the Court of Civil Appeals, to which the writ of error is allowed, should be in favor of the defendant in error. The statutes are plain in making an adverse judgment of the Court of Civil Appeals binding on the party against whom it is rendered, who sues out no writ of error. The assignments urged by defendant in error come within neither of the rules announced in Holland v. Nimitz, supra. Defendant in error was the losing, instead of the prevailing, party in the Court of Civil Appeals, and has not taken the indispensable steps to the proper presentation here of the matters of which complaint is made. In the absence of a petition for writ of error, embodying assignments of error, based on the action of the Court of Civil Appeals in reducing the amount awarded him by the

trial court or in refusing to increase the amount of his recovery, Carlisle is not entitled to have us review that action of the Court of Civil Appeals.

Having determined the only question properly presented for our decision, and having determined same adversely to plaintiffs in error, it is ordered that the judgment of the Court of Civil Appeals be affirmed.

*Affirmed.*